# 12-1163-CR

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT



UNITED STATES OF AMERICA,

*Appellee,*

*v.*

FRED ALESI, AKA WHINEY, ANTHONY ARCURI, AKA TONY, ROBERT BERLINER, AKA BACALA, LAWRENCE BETRO, FRANKLIN CAMARANO, ANTHONY CAVEZZA, AKA TONY BAGELS, FRANCIS COSTELLO, DOMINICK DELIO, ROBERT DITO, THOMAS DITTA, FRANK POLITI, AKA FRANKIE P, AKA FRANKIE CAP, TONY SABBAGH, AKA TONY O, AYUB SAYED, AKA ADAM, GIOVANNI VELLA, AKA JOHN VELLA, AKA MOUSEY, AKA LITTLE JOHN, CARLOS ZAMBRANO,

*Defendants,*

*and*

JOHN CAVALLO, AKA JACKIE CAVALLO, AKA LITTLE JOHN,

*Defendant-Appellant.*

—————————

*On Appeal from the United States District Court*
*for the Eastern District of New York (Central Islip)*

## BRIEF FOR DEFENDANT-APPELLANT
## (PURSUANT TO ANDERS V. CALIFORNIA, 386 U.S. 738 (1967))

PETER J. TOMAO, ESQ.
*Attorney for Defendant-Appellant*
226 7th Street, Suite 302
Garden City, New York 11530
516-877-7015

# TABLE OF CONTENTS

|  | Page |
|---|---|
| **TABLE OF AUTHORITIES** | **iii** |
| **PRELIMINARY STATEMENT** | **2** |
| **JURISDICTIONAL STATEMENT** | **3** |
| **STATEMENT OF ISSUES PRESENTED FOR REVIEW** | **4** |
| **STATEMENT PURSUANT TO ANDERS v. CALIFORNIA** | **4** |
| **STATEMENT OF THE CASE** | **5** |
| Indictment | **6** |
| Cavallo Entered a Guilty Plea on July 14, 2011 | **7** |
| The July 14, 20110 Plea Agreement | **7** |
| Waiver of Rights and Voluntariness of Plea on July 14, 2011 | **8** |
| Sentencing Procedures | **11** |
| The Pre Sentence Report | **11** |
| Sentencing | **14** |
| **SUMMARY OF ARGUMENT** | **20** |
| **ARGUMENT** | **21** |
| **POINT I** – MR. CAVALLO'S APPEAL IS FORCLOSED BY THE PLEA AGREEMENT | **21** |
| **POINT II –** THERE ARE NO OTHER MERITORIOUS OR NON-FRIVOLOUS GROUNDS FOR APPEAL | **24** |
| A. There Were No Errors in The Plea Proceedings Affecting  Mr. Cavallo's Substantive Rights | **24** |
| 1.  Mr. Cavallo entered his guilty pleas knowingly and voluntarily | **25** |
| 2.  Mr. Cavallo's Allocution was legally sufficient | **26** |

B.    There Were No Errors in The Substantive and Procedural Reasonableness of The Sentence     **29**

    1.  Requirement That an Anders Brief Determine the Substantive and Procedural Reasonableness of the Sentence     **29**

    2.  The Court Imposed a Sentence on Mr. Cavallo which was Procedurally  Reasonable     **30**

       a.  The lower Court Properly Determined the Guideline Range     **30**

       b.  The Lower Court Properly treated the Guidelines as Advisory     **32**

    3.  The Court Imposed a Sentence on Mr. Cavallo which was substantively Reasonable     **32**

**CONCLUSION**     **34**

# TABLE OF AUTHORITIES

**CASES**   **PAGE**

*Anders v. California*, 386 U.S. 738 (1967)   1,4,29

*Boykin v. Alabama*, 395 U.S. 238 (1969)   8

*Brady v. United States*, 397 U.S. 742 (1970)   24

*Gall v. United States*, 552 U.S. 38 (2007)   29

*Irizarry v. United States*, 508 F.2d 960 (2d Cir. 1975)   26

*Kimbrough v. United States*, 558 U.S. 85 (2007)   29

*United States v. Arevalo*, 628 F.3d 93 (2d Cir. 2010)   21

*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)   29

*United States v. Calderon*, 243 F.3d 587 (2d Cir. 2001)   26

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008)   32

*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005)   20,29

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004)   24

*United States v. Espinal*, 634 F.3d 655 (2d Cir. 2011)   24

*United States v. Fuller*, 426 F.3d 562 (2d Cir. 2005)   31

*United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000)   21

*United States v. Jones*, 460 F.3d 191 (2d Cir. 2006)   33

*United States v. Jones*, 531 F.3d 163 (2d Cir. 2008)   29,30

*United States v. Pope*, 554 F.3d 240 (2d Cir. 2009)   33

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007)   32

*United States v. Vaval*, 404 F.3d 144 (2d Cir. 2005)   24

*United States v. Verkhoglyad*, 516 F.3d 122 (2d Cir. 2008)   29

*United States v. Whitley*, 503 F.3d 74 (2d Cir. 2007)   29

## UNITED STATES CONSTITUTION

U.S. Const. amend. VI      29

## FEDERAL RULES OF CRIMINAL PROCEDURE

Rule 11      8,24,25,26

## STATUTES

18 U.S.C. § 2      6

18 U.S.C. §1951 (a)      2,6, 13

18 U.S.C. §1955      6

18 U.S.C. § 1961      6

18 U.S.C. § 3231      3

18 U.S.C. § 3551      6

18 U.S.C. § 3553(a)      18, 30,31

18 U.S.C. §3742(a)      3

28 U.S.C. §1291      3

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. §2B3.2(a)      12

U.S.S.G. §2B3.2(b)(1)      12

U.S.S.G. §2B3.2(b)(2)      12

U.S.S.G. §3B1.1(b)      13

U.S.S.G. §3B1.1(c)      12, 13

U.S.S.G. §3C1.1      12

U.S.S.G. §3E1.1.(b)      8

## PRELIMINARY STATEMENT

John Cavallo appeals from judgment dated March 16, 2012, entered by Senior United States District Judge Leonard D. Wexler for the United States District Court for the Eastern District of New York on March 19, 2012 (A96).[1]

Pursuant to his guilty plea to Conspiracy to Commit Extortion by Use of Force in Violation of Title 18, United States Code, Section 1951(a), the district court sentenced Mr. Cavallo to a total term of 51 months imprisonment (A97). Mr. Cavallo is currently incarcerated on that sentence.

After a thorough review of the record and diligent legal research, counsel has found no meritorious or non-frivolous issues to raise on appeal.

---

[1] "A" followed by numbers refers to pages in the Joint Appendix filed with this brief. "PSR" followed by paragraph (¶) numbers or page numbers refers to the Pre-Sentence Investigative Report dated February 7, 2012. The PSR is being filed under seal.

## **JURISDICTIONAL STATEMENT**

The district court had jurisdiction pursuant to 18 U.S.C.§3231, which grants district courts original jurisdiction over all alleged offenses against the United States committed in that district. This case was initiated in the Eastern District of New York with the filing of sealed indictment on January 11, 2011 (A1). The indictment, as it applied to Mr. Cavallo, charged six (6) counts of criminal conduct: (1) Racketeering Conspiracy, (2) Conspiracy to Operate Illegal Gambling Business, (3) Illegal Gambling – 9th Avenue Club, (4) Extortion Conspiracy, (5) Illegal Gambling – Castle Collision Club, and (6) Extortion Conspiracy (A12-A27).

Mr. Cavallo entered a plea of guilty, pursuant to a written plea agreement, on July 14, 2011, to Extortion Conspiracy, the sixth count listed in the indictment (A69, A45-A57). On March 6, 2012, the court below sentenced Mr. Cavallo to 51 months imprisonment (A92). Mr. Cavallo filed a timely notice of appeal on March 23, 2012 (A101).

The jurisdiction of this Court is invoked pursuant to 28 U.S.C.§1291 and 18 U.S.C.§3742(a).

3

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The following issues are presented by this Appeal:

Whether Mr. Cavallo's right to appeal is foreclosed by his plea agreement?

Whether there are any meritorious or non-frivolous grounds for appeal?

## STATEMENT PURSUANT TO ANDERS v. CALIFORNIA

After a thorough review of the record and diligent legal research, counsel has found no meritorious or non-frivolous issues to raise on appeal. Accordingly, a motion to relieve counsel accompanies this brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).

## STATEMENT OF THE CASE

John Cavallo is today 64 years old, and a United States Citizen by birth (PSR). Mr. Cavallo was born on May 25, 1948, in Brooklyn, New York. He is one of three children born to Jack and Gemma (nee Asara) CavalloMr. Cavallo was raised in a middle-income household, free from abuse or major financial problems. The PSR characterized his upbringing as "normal." (PSR¶73). . His parents are both deceased. His mother died in 1980, at the age of 62, from uterine cancer. His father, a construction worker, died in 2008, at the age of 88, from an unrecalled disease caused by an infection (PSR¶70).

Mr. Cavallo enjoys the support of his five children, his wife and the remainder of his family throughout this case. Mr. Cavallo's sister, Joy Capaso, described Mr. Cavallo as being "a helpful, supportive person, who loves his children and his family" (PSR¶72). John Cavallo, Jr. described his father as "a generous, honest person, who has always taken care of his family" (PSR¶75). Mrs. Cavallo also said that her husband is "a generous person and an excellent father" (PSR¶78).

Despite his healthy family life, Mr. Cavallo has faced and still faces serious medical conditions. Specifically, he has undergone three open heart surgeries, was diagnosed with bladder cancer in 1998, developed cancer in his right lung in 2002 and had it removed, and had his prostate removed in 2005. Additionally, he has

suffered from gastrointestinal bleeding, mini-strokes, arthritis, and fibromyalgia. Mr. Cavallo has had multiple stomach operations and requires blood transfusions regularly (PSR¶83).

## INDICTMENT

Mr. Cavallo was arrested on the Indictment in this case on January 20, 2011 (PSR page 1, ¶ 36). The Indictment initially charged him with six (6) counts of criminal conduct: (a) Racketeering Conspiracy in violation of 18 U.S.C.§§1961(1) and (5)(b) Conspiracy to Operate Illegal Gambling Business in violation of 18 U.S.C.§1955(a)(c) Illegal Gambling – 9th Avenue Club in violation of 18 U.S.C.§§1955(a), 2, and 3551 et seq.; (d) Extortion Conspiracy in violation of 18 U.S.C.§§1951(a) and 3551 et seq.; (e) Illegal Gambling – Castle Collision Club in violation of 18 U.S.C.§§1955(a), 2, and 3551 et seq.; and (f) Extortion Conspiracy in violation of 18 U.S.C.§§1951(a) and 3551 et seq. (A12-A27). While the indictment charged Mr. Cavallo with racketeering, the government abandoned those charges in the plea agreement. Mr. Cavallo never admitted to being a member of organized crime.

On January 21, 2011 Magistrate Judge Arlene R. Lindsay arraigned Mr. Cavallo from the Nassau University Medical Center via telephone Mr. Cavallo entered a plea of not guilty to all counts. (A1). The district court entered an order

of detention at that time (A1). Mr. Cavallo has been incarcerated since that time. (PSR page 1.)

After several bail applications were unsuccessful, at Mr. Cavallo's request, the district court scheduled his case for trial starting August 1, 2011 (A-2). The parties filed pre-trial motions in June and July (A2-3).

Mr. Cavallo also appealed the order denying bail and moved this Court to set bail. (A3). This Court, however, denied Mr. Cavallo's motion by order dated June 27, 2011 (A4).

## CAVALLO ENTERED A GUILTY PLEA ON JULY 14, 2011

On July 14, 2011, Mr. Cavallo withdrew his previous not guilty plea to the extortion conspiracy charged count six of the indictment and entered a plea of guilty to that count in full satisfaction of the charges in the indictment (A58-A73). Mr. Cavallo entered his plea pursuant to a written plea agreement dated July 14, 2011 (the "Plea Agreement") under which the government agreed to dismiss the racketeering counts at sentencing (A45-A57).

### *The July 14, 2011 Plea Agreement*

The Plea Agreement provided that the plea was taken in satisfaction of the charges in the underlying indictment. Specifically, the government agreed that it would bring no further charges against Mr. Cavallo for (a) operating an illegal gambling business on 9th Avenue in Bohemia, New York, as set forth in count

three; (b) operating an illegal gambling business in the Castle Collision Autobody Shop, as set forth in count five; (c) conspiracy to extort John Does #1 through #5, as set forth in count four; and (d) conspiracy to extort John Does #6 and #7, as set forth in count five. Additionally, the government agreed that at sentencing it would move to dismiss the remaining counts with prejudice (A49).

In the Plea Agreement, the government estimated that the likely sentencing guideline range would be 57 to 71 months based on an offense level of 25 and a Criminal History Category I. The government further agreed to make a motion for an additional one level adjustment pursuant to U.S.S.G.§3E1.1(b) which would reduce the offense level to 24 and the range of imprisonment to 51 to 63 months (A47).

The Plea Agreement contained a waiver of appeal provision which provided that:

> The defendant agrees not to file an appeal or otherwise challenge…
> the conviction or sentence in the event that the Court imposes a term
> of imprisonment of 71 months or below. This waiver is binding
> without regard to the sentencing analysis used by the Court…

(A48).

### Waiver of Rights and Voluntariness of Plea on July 14, 2011

Defendant's rights under *Boykin v. Alabama*, 395 U.S. 238 (1969) and Rule 11(b)(1) of the Federal Rules of Criminal Procedure were respected. At the change of plea proceedings held on July 14, 2011:

8

- Mr. Cavallo was present and represented by counsel, namely, the assigned counsel, Peter J. Tomao, Esq. (A59);

- Mr. Cavallo was properly found competent to enter his plea based on findings that he understood the proceedings and he was not impaired by any drugs or alcohol (A61-A62);

- Mr. Cavallo advised the lower court that he had reviewed the count of the Indictment to which he was pleading and understood the charges (A67);

- The district court advised Mr. Cavallo of his constitutional rights and that by pleading guilty he was giving up his right to trial and all the rights that he would have had at trial, including his right to persist in his plea of not guilty, to a trial by a jury as which he would be presumed innocent until and unless the government proved his guilt beyond a reasonable doubt; that he would be presented by counsel at all stages of the proceeding and that counsel would be appointed for him if necessary, that he would have the rights at trial to confront witnesses against him, to offer evidence on his behalf, and to remain silent if he chose to do so (A62-A68);

- The court below advised Mr. Cavallo of the maximum sentences to which he would be subject by pleading guilty (A67-A68);

- The lower court advised Mr. Cavallo that the likely sentencing guideline range provided by the government in the plea agreement was not binding on the court (A68);

- The court determined after questioning Mr. Cavallo that his plea had not been obtained by threats or by any undisclosed promises between him and the government (A69-A70);

- Defense counsel advised the Court that he was not aware of any legal reason why Mr. Cavallo should not plead guilty (A69);

- Mr. Cavallo told the court below, in his own words, what he had done which made him guilty of the crime charged in the indictment. Specifically, he stated that he "agreed…with others to obtain money from operating of a poker room and that if they did not pay, they would not be able to continue in business" (A70); and

- The government outlined what it would prove if the case went to trial, namely that:

[T]he defendant, together with others, knowingly and intentionally conspired, in or about and between January 2008 and January 2010, within the Eastern District of New York, to affect commerce by extortion, in that the defendant, his coconspirators, agreed to obtain property, money specifically, from John Doe number six who the government will identify John Doe number six as Anthony Arcuri, and John Doe number seven as Ayub Sayed, and their consent to give this money to the defendant and his coconspirators was induced through the wrongful use of actual and threatened force, violence and/or fear.

(A66-A67).

The government asked Mr. Cavallo to confirm that he agreed with two co-defendants to engage in this crime, namely, Franklin Camarano and Giovanni Vella (A70-71). However, defense counsel objected that such an inquiry was not required and was not part of the plea agreement. Judge Wexler then asked Mr. Cavallo whether he agreed with "others" and was a "part of the conspiracy." Mr. Cavallo responded "Yes" (A71).

Based on these proceedings the district judge made the following findings:

Based upon the information given to me, I find the defendant is acting voluntarily, he fully understands his rights, the consequences of his plea, and there's a factual basis for the plea and I, therefore, accept the plea of guilty to count 6 of the indictment.

(A71).

## SENTENCING PROCEDURES

### *The Pre Sentence Report*

Based on a presentence investigation, the U.S. Probation Department released its Pre Sentence Investigation Report on February 7, 2012 ("PSR").

The PSR's sentencing calculation varied from the Plea Agreement in several ways:

(1) The PSR set the total offense level at 26, not 25 as estimated in the Plea Agreement (PSR¶57).

(2)   The PSR made a 2 point adjustment for role in the offense (i.e., the defendant directed a co-defendant and another individual to extort money), while the Plea Agreement called for a larger 3 point adjustment for defendants role as a "manager or supervisor" (PSR¶53; A47).

(3)   The PSR did not include the two level acceptance of responsibility adjustment or the one level reduction to which the parties had agreed should be deducted as a global plea point (PSR¶56; A47).

(4)   The PSR calculation set the guideline imprisonment range at 63 to 78 months, not 57 to 71 months or 51 to 63 months, as stated in the July 2011 Plea Agreement (PSR¶97).

We compare the Guideline Total Offense Calculation in the Plea Agreement ("PA") and PSR below:

| | U.S.S.G. § | PA Level | | PSR Level | PSR ¶ |
|---|---|---|---|---|---|
| Base Offense Level | 2B3.2(a) | 18 | A47 | 18 | 49 |
| Specific Offense Characteristics Implied Threat of Bodily Harm | 2B3.2(b)(1) | 2 | | 2 | 50 |
| Specific Offense Characteristics Amount Demanded >$50,000 | 2B3.2(b)(2) | 2 | | 2 | 51 |
| Victim-Related Adjustments | None | 0 | | 0 | 52 |
| Adjustment for Role in the Offense | 3B1.1(c) | 3 | | 2 | 53 |
| Adjustment for Obstruction of Justice | 3C1.1 | 2 | | 2 | 54 |
| Adjusted Offense Level | N/A | 27 | | 26 | 55 |
| Adjustment for Acceptance of Responsibility | None | -3 | | 0 | 56 |

12

| Total Offense Level | N/A | 24 | | 26 | 57 |
|---|---|---|---|---|---|
| Sentencing Range | | 51-63 | | 63-78 | |

The Total Offense Level computed by the PSR was one level greater than that calculated in the Plea Agreement (A47).

Both the PSR and the Plea Agreement set Mr. Cavallo's Criminal History Category at level I (PSR¶63; A47). Additionally, both the PSR and Plea Agreement noted that pursuant to Title 18, United States Code, Section 1951(a), the maximum term of imprisonment is 20 years (PSR¶96; A45).

Mr. Cavallo through counsel objected to the PSR. Specifically, Mr. Cavallo objected to the PSR the findings relating to: (1) the amount of money involved in the offense and (2) the acceptance of responsibility adjustment. Since the PSR found that Mr. Cavallo's role in the offense was lower than that set forth in the Plea Agreement, Mr. Cavallo's argued that the Total Offense Level should be Level 23 which resulted in an imprisonment range of 46 to 57 months. Sentencing Memorandum at 23.

Mr. Cavallo argued that the Probation Department found that Mr. Cavallo directed at most three individuals. Such a finding leads to the conclusion that the provisions of U.S.S.G.§3B1.1(c), which applies to criminal activity involving fewer than five participants, is controlling in the case at bar, not U.S.S.G§3B1.1(b), which applies to criminal activity involving five or more participants.

13

With regard to the adjustment for acceptance of responsibility, Mr. Cavallo, in his Sentencing Memorandum, argued that the court should adopt the recommendation of the July 2011 Plea Agreement, which granted a two point reduction, rather than the PSR, which granted no such reduction (PSR¶56; A47).

As stated above, Mr. Cavallo did waive his right to have a hearing on the objections to the PSR. Nonetheless, counsel did attempt to raise those objections during the Sentencing proceeding (A75-A77). While the Judge did not explicitly deny his objections, such a denial is implied in the district court judge's treatment of the matter (A75-A77).

### *Sentencing*

At sentencing, the lower court sentenced Mr. Cavallo to 51 months of incarceration, three years supervised released, and a special assessment of $100. At that time, the lower court substantially followed the proper procedure:

- At sentencing, Mr. Cavallo was present and had the assistance of competent and experienced counsel, Peter J. Tomao, Esq. (A74-A95);

- The district court verified that the defendant and counsel read and discussed the PSR (A75-A76);

- The lower court acknowledged receiving and having read Mr. Cavallo's Sentencing Memorandum (A82-A84);

- The court allowed the parties an opportunity to comment of the PSR and asked if the defendant wished to set a hearing for his objections, but the defendant waived his right to a hearing during the proceedings (A75-A76);

- The lower court provided counsel an opportunity speak on the defendant's behalf and defense counsel utilized said opportunity (A84-A88).

- Counsel renewed four motions for downward departures from the sentencing guidelines would be appropriate in the instant case (*See* A84-A88). Specifically, counsel voiced Mr. Cavallo's requests in the following colloquy:

> THE COURT: Now I understand. Thank you. Do you want to be heard with respect to your client?
>
> MR. TOMAO: Yes, your Honor.
>
> THE COURT: Briefly.
>
> MR. TOMAO: Your Honor, we have made in connection –
>
> THE COURT: I read all these papers, by the way, and every letter sent.
>
> MR. TOMAO: I'm sorry, your Honor?
>
> THE COURT: I said, I read your papers and I read every letter sent.
>
> MR. TOMAO: Thank you, your Honor, I appreciate that.
>
> THE COURT: That's why I said briefly. I read all of this.

MR. TOMAO: I understand, your Honor. We did make four motions for downward departures. The Second Circuit is asking that we renew those motions publicly so there's rulings on them. I have a number of sentencing appeals where that's raised as being waived if I don't repeat them, so let me indicate the four motions I made. I made a motion that you downwardly depart on the basis of Mr. Cavallo's physical condition. You have substantial information in that regard.

THE COURT: I read all of that, all of the doctors' report, the hospital reports, two of them, hospital records, doctors' reports. I read them all.

MR. TOMAO: Thank you, your Honor. As I indicated, Dr. Schwecter is in the courtroom if the Court had any questions for him. We also made, and I'm sure the Court has read, a motion based on extraordinary family circumstances.

THE COURT: Yes.

MR. TOMAO: As well as presentencing confinement.

THE COURT: Yes.

MR. TOMAO: And, also, we've asked the Court to consider all of those collectively under the 5K2.0 as multiple circumstances.

THE COURT: Yes.

MR. TOMAO: Your Honor, I know Mr. Cavallo because I was appointed by Judge Spatt to represent him back in 2005. What I know about him I know from what's happened here in the courtroom and from what his family has told me and have written in the letters to you. I know that the picture that's painted by this is very different than the picture painted by the government. They paint a picture of Mr. Cavallo not as a heartless gangster, as the government would portray him as, but as a loving, supportive father, husband and friend. Mr. Cavallo also, as the Court has recognized before, has serious medical problems. However, he has a strong will and determination to put his best foot forward. When

I represented him in the earlier case he even refused to go to the hospital because he would delay the trial. He went to trial and was found not guilty. This case is very different. He's admitted his guilt and is ready to be sentenced. He's admitted his guilt to the extortion count. Your Honor, there was a RICO count which he was ready to fight and he wanted a speedy trial on that issue. When the Government agreed to accept the plea to the extortion count, he pled guilty and since then he's wanted to go forward with his sentencing to end the stress of the case upon him and his family. Your Honor, we would ask the Court to consider the new amendments to the sentencing guidelines, the 2010 amendments, which now make the physical condition of a defendant an issue which may be considered. And we think that you can see that based upon the representation in this case, this is a very unusual extraordinary case in terms of the presentence, in terms of the guideline as regards Mr. Cavallo's physical condition. I think we also can see now that we have had the full investigation and the PSR, that there were no physical threats that were ever conveyed to victims in this case. They've spoken to one man who is referred to CW 1. He recorded them for the FBI and, fortunately, have gone no further. There's no evidence here of any physical violence involving Mr. Cavallo. The associations that are indicated are many years old and have to do with places that are long gone and people who are long dead. Mr. Cavallo is about to be sentenced by the Court. He's been in prison for over a year. We ask that he be released so he can go back to his family, back to his doctors and deal with his medical issues; and, if not, that he get the shorter sentence the Court feels appropriate under the circumstances. Thank you.

(A84-A88).

- In summing up the above-quoted colloquy, the district court noted that it had

  reviewed all of Mr. Cavallo's requests and denied all of such requests for

  downward departures (*See* A91-A92);

17

- The court permitted the defendant an opportunity to speak for himself and the defendant utilized said opportunity to apologize for his actions (A88);

- The court did not advise the defendant of any right to appeal and a right to appeal *in forma pauperis*, however this issue is mute. Mr. Cavallo filed a timely Notice of Appeal and this Court permitted him to proceed in forma Pauperis;

- The written sentencing judgment correctly sets forth the plea, offense of conviction, and sentence, all of which are in conformity with the oral sentence (A96-A97);

- The lower court determined that the appropriate guideline offense level 24 resulted in a sentencing range of 51 to 63 months incarceration (A92); and

- The court did not discuss the Criminal History Category or the advisory nature of the Guidelines range in the Sentencing proceedings, but did discuss the advisory nature of the Guidelines in the Plea proceedings (A68).

While, the district court did not provide a detailed explanation for the sentence imposed, Judge Wexler said that he had considered the 18 U.S.C.§3553(a) factors in its sentencing decision (A94).

The Statement of Reasons attached to the judgment in this case indicated that the district court adopts the presentence report without change.

18

The record as a whole clearly indicated that Mr. Cavallo was aware of the contents of the report and had assisted his counsel in making challenges to it.

The resulting sentence was 51 months incarceration, three years supervised release, and a special assessment of $100 (A92). As noted above, under the Plea Agreement, Mr. Cavallo waived his right to appeal his sentence if the district court sentenced him to a term of 71 months or below (A48).

This appeal follows.

## <u>SUMMARY OF ARGUMENT</u>

Mr. Cavallo's appeal is barred by the terms of his plea agreement since he knowingly, voluntarily, and competently waived his right to appeal any sentence which did not exceed 71 months and the district court sentenced him to 51 months (Point One).

Based on a thorough review of the record and legal research, counsel finds no basis to argue that the lower court did not have a proper basis to accept Mr. Cavallo's guilty plea or that the sentence imposed was unreasonable due to any legal or procedural error. *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005) (Point Two).

**ARGUMENT**

**POINT ONE**

**MR. CAVALLO'S APPEAL IS FORCLOSED BY THE PLEA
AGREEMENT**

Mr. Cavallo entered a plea agreement, which contained a waiver of his right
to appeal.  In the Plea Agreement, he agreed that he would not appeal his sentence
if the district court sentenced him to 71 months or less.  Since the lower court
imposed a sentence of 51 months, his appeal is barred.

This Court has upheld the validity of appeal waivers in plea agreements in
general where they are made "knowing, voluntarily, and competently" *United
States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir 2000); see also *United States v.
Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010) ("Waivers of the right to appeal a sentence
are presumptively enforceable").

In the instant case, there is no basis on which counsel can argue that Mr.
Cavallo did not enter the plea agreement "knowing, voluntarily, and competently."

The Plea Agreement specifically provided that Mr. Cavallo waived his right
to appeal his sentence if the district court sentenced him to 71 months or less
(A48).

The plea agreement contained a waiver of appeal provision and was in
writing (A45-A57).  Mr. Cavallo signed the Plea Agreement indicating "I have

read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily" (A57).

At his plea allocution on July 14, 2011, the district judge specifically asked Mr. Cavallo if he had read the plea agreement to which Mr. Cavallo said yes. (A____). The judge then went over in detail with Mr. Cavallo the penalty provisions of the agreement, which Mr. Cavallo affirmed he understood (A60-A66).

The judge also specifically reviewed the waiver of appeal provision with Mr. Cavallo. In the following colloquy, Mr. Cavallo stated that he understood what he was waiving:

> THE COURT: I'll ask the government; in the plea agreement, is there anything concerning appeal?
>
> MR. TOOSSI: Yes, Your Honor. The defendant agrees to waive his right to appeal in the event he receives a sentence of 71 months of incarceration or below.
>
> THE COURT: Do you understand what the government just said?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: They just said if I give you 71 months or less, you may not appeal; do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If I give you more than 71 months, you may appeal only the sentence. Once I accept your plea, you cannot take that back; do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

(A64).  The above-quoted exchange demonstrates that Mr. Cavallo understood the nature of the waiver at that time.  Following this colloquy, the judge made the following findings:

> THE COURT: Based upon the information given to me, I find the defendant is acting voluntarily, he fully understands his rights, the consequences of his plea, and there's a factual basis for the plea and I, therefore, accept the plea of guilty to count 6 of the indictment.

(A71-A72).

Based on this record, counsel has no basis to argue that the waiver of appeal provision of the plea agreement does not bar any appeal of the sentence.  Mr. Cavallo knowingly, voluntarily, and competently waived his right to appeal any sentence that did not exceed that 71 months, which was the sentence imposed by the district court.  Accordingly, his waiver precludes the instant appeal.

## POINT TWO

## THERE ARE NO OTHER MERITORIOUS OR NON-FRIVOLOUS GROUNDS FOR APPEAL

### A. There Were No Errors In The Plea Proceeding Affecting Mr. Cavallo's Substantive Rights

This Court reviews appeals based on violations of Rule 11 of the Federal Rules of Criminal Procedure for plain error. *United States v. Espinal*, 634 F.3d 655, 658 (2d Cir. 2011), *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005). The Supreme Court has held that:

> [A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is "sufficient to undermine confidence in the outcome" of the proceeding.

*United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)(Citations omitted). Based on this record, there is no basis to argue that the lower court erred much less than that it committed plain error in this case.

Counsel is unable to argue that Mr. Cavallo's guilty plea was not knowing and voluntary in violation of Rule 11 (b)(2) of the Federal Rules of Criminal Procedure, *see Brady v. United States*, 397 U.S. 742 (1970) of that his allocutions were insufficient in violation of Rule 11(b)(3) of the Federal Rules of Criminal Procedure.

### 1.    Mr. Cavallo Entered His Guilty Plea Knowingly and Voluntarily

As we discussed above, Mr. Cavallo's rights under Rule 11(b)(1) of the Federal Rules of Criminal Procedure were respected at the plea proceedings held on July 14, 2011.

During the proceeding, the United States District Court Judge found that Mr. Cavallo was competent to enter his plea (A61-A62).  The record showed that he understood the proceedings because he was not impaired by any drugs, medications, or alcohol (A61-A62).  Mr. Cavallo was represented by counsel during the entire proceedings (A59).

Further, during the plea proceedings, the presiding judge advised Mr. Cavallo of the constitutional rights which he gave up by pleading guilty including his right to a trial by a jury, to persist in his plea of not guilty, to be presumed innocent until and unless proven guilty beyond a reasonable doubt, to be represented by counsel, to confront witnesses against him, to offer evidence on his own behalf, and to remain silent if he chose to do so (A62-A68).

Mr. Cavallo indicated that he was aware of the maximum sentence to which he would be subject by pleading guilty (A67-A68).

The lower court determined that Mr. Cavallo's plea had not been obtained by threats or by any undisclosed promises between him and the government (A69-A70).

**2.  Mr. Cavallo's Allocution Was Legally Sufficient**

Under Rule 11(b)(3) of the Federal Rules of Criminal Procedure, the district court must determine that there is a factual basis before accepting a plea.  This Court has held that the district court may satisfy that requirement by matching the facts to the legal elements of the crime.  *United States v. Calderon*, 243 F.3d 587, 589-90 (2d Cir. 1975).  In making that determination, the district court may rely not only on the defendant's allocution, but may consider any other facts "at its disposal," including the government's offer of proof.  *Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir 1975).  In the instant case, the United States District Court Judge determined that there was a factual basis to accept the plea based on Mr. Cavallo's allocution and the government's offer of proof.

At the July 14, 2001 plea proceeding, the judge found that there was a factual basis for Mr. Cavallo's plea to the charge of extortion conspiracy (Count 6 of the Indictment) based on Mr. Cavallo's statement and the government's offer of proof (A66-A67; A70).

At his allocution, Mr. Cavallo gave the following responses to the judge's inquires:

> THE COURT: You'll have to tell me what you did in respect to count 6 that's causing you to plead guilty, what did you do?

> THE DEFENDANT: I agreed, Your Honor, with others to obtain money from operating of a poker room and that if they did not pay, they would not be able to continue in business.

26

THE COURT: Where was this done?

THE DEFENDANT: In Nassau and Suffolk County.

THE COURT: During what period of time?

THE DEFENDANT: From 1/08 to 1/10.

MR. TOMAO: Your Honor, the indictment charges a period of January 2008 to January 2010. Mr. Cavallo admits it took place during that period of time.

THE COURT: Are you satisfied with the allocution?

MR. TOOSSI: Yes, Your Honor, with one follow-up. I would ask that the defendant confirm that he had agreed with Franklin Camarano and Giovanni Vella to engage in this crime.

MR. TOMAO: That's not part of our agreement that he name any names, your Honor. He agreed with others. If he wants names, it's not an agreement that he identify any individual.

THE COURT: He did agree with others to do this, he was part of a conspiracy?

MR. TOMAO: He certainly did; is that right; is that correct, Mr. Cavallo?

THE DEFENDANT: Yes.

THE COURT: Is that okay with you?

MR. TOOSSI: That's fine.

MR. TOMAO: We also for the record –

THE COURT: I'm not finished. Did you know it was wrong what you were doing at the time?

THE DEFENDANT: Yes, your Honor.

27

MR. TOMAO: We do concede, Your Honor, that it did affect interstate commerce.

THE COURT: Based upon the information given to me -- are you satisfied with the allocution?

MR. TOOSSI: Yes, Your Honor.

(A70-A71).

The prosecutor outlined the government's proof as:

THE COURT: Now, if this case went to trial, the government would have to prove certain things beyond a reasonable doubt. I'm going to have them explain to you the elements they would have to prove beyond a reasonable doubt before a jury could find you guilty if the case went to trial.

MR. TOOSSI: Your Honor, the government would prove the defendant, together with others, knowingly and intentionally conspired, in or about and between January 2008 and January 2010, within the Eastern District of New York, to affect commerce by extortion, in that the defendant, his coconspirators, agreed to obtain property, money specifically, from John Doe number six who the government will identify John Doe number six as Anthony Arcuri, and John Doe number seven as Ayub Sayed, and their consent to give this money to the defendant and his coconspirators was induced through the wrongful use of actual and threatened force, violence and/or fear.

(A66-A67).

The above allocution and offers of proof satisfy the elements of the offense charged and provide a factual basis on which the district court could accept the pleas.

Based on the foregoing, there is no basis on which to appeal the plea proceedings.

28

**B.  There Were No Errors in the Substantive and Procedural Reasonableness of the Sentence**

> **1.      Requirement That an *Anders* Brief Determine the Substantive and Procedural Reasonableness of the Sentence**

In *United States v. Whitley*, 503 F.3d 74, 77 (3d Cir. 2007), this Court determined that an *Anders* brief should include a discussion of the substantive and procedural reasonableness of a defendant's sentence.

In *United States v. Booker*, 543 U.S. 220, 261-262 (2005), the Supreme Court set the standard for appellate review of the "reasonableness" of a sentence. Following *Booker*, this Court has held that

> A sentence will satisfy the requirements of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and the Sixth Amendment if a sentencing judge: 1) calculates the relevant Guidelines range, including any applicable departure under the Guidelines system; 2) considers the calculated Guidelines range, along with the other §3553(a) factors; and 3) imposes a reasonable sentence.

*United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005).

This Court reviews the "reasonableness" of sentences by applying

> a deferential standard limited to identifying abuse of discretion regardless of whether a challenged sentence is "inside, just outside, or significantly outside the Guidelines range."

*United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008) <u>citing</u> *Gall v. United States*, 552 U.S. 38, 41 (2007); *Kimbrough v. United States*, 558 U.S. 85, 111 (2007); *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir 2008).

To determine reasonableness, the Court first looks at the procedure which the sentencing court followed to ensure that there were no significant procedural defects. If the sentencing was "procedurally sound," this Court will then "consider the substantive reasonableness of the sentence" taking into account the totality of the circumstances." *United States v. Jones*, 531 F.3d at 170.

### 2. The Court Imposed a Sentence on Mr. Cavallo which was Procedurally Reasonable

The standard for procedural reasonableness is satisfied where, as here, the district court properly (a) identified the Guidelines range supported by the facts found by the court, (b) treated the Guidelines as advisory, and (c) considered the Guidelines together with the other factors outlined in 18 U.S.C.§3553(a).

Counsel has no basis to argue that the district court failed to properly identify the Guidelines range supported by facts found by the court. The defendant waived a hearing on his objections, which were filed with the court.

### a. The Lower Court Properly Determined the Guideline Range

Counsel has no basis to argue that the district court failed to properly identify the guidelines range supported by facts found by the court. At sentencing the district court reviewed the sentencing calculations made in the pre-sentence report and Mr. Cavallo's applications regarding them (A82-A84).

While the district court did not give further explanation as to how it reached its sentencing decision, assuming *arguendo* that the court followed the calculations

outlined in the Plea Agreement, it would appear that the court calculated the Total Offense Level to be 24 based on two points for acceptance of responsibility and one point based on the global disposition (A47; A92).

This Court has held that a "district court . . . may [comply with Rule 32] by adopting the recommendations of the Presentence Report." *United States v. Ahders*, 622 F.3d 115, 119 (2d Cir. 2010). In this case, Judge Wexler heard arguments regarding the guideline calculations and adopted the recommendations of the PreSentence Report as set forth in the Statement of Reasons with a three level adjustment for acceptance of responsibility.

The district court also considered but rejected the defense motions for downward departures and for a non-guideline sentence. This Court applies a deferential standard of review to factual determinations, such as those underlying motions for downward departures, and will reverse only for "clear error." *United States v. Fuller*, 426 F.3d 562 (2d Cir. 2005). The record is clear that the sentencing court was aware of its authority to depart and weigh the motions for departures as well as whether to grant a non-guidelines sentence after considering the factors in 18 U.S.C. §3553(a). While we disagree with the sentence imposed, we cannot argue that it was procedurally unreasonable.

### b. The Lower Court Properly Treated the Guidelines as Advisory

After determining the appropriate guideline sentencing range, the lower court failed to explicitly acknowledge that the guidelines are advisory. Nonetheless, the district court did acknowledge the advisory nature of the guidelines in the plea proceedings (A68) and inherently acknowledged their advisory nature by allowing defense counsel to present his view of the defendant (A86).

The court below also considered Mr. Cavallo's argument for a non-guideline sentence (A84-A88). Additionally, the district court acknowledged that it had reviewed Mr. Cavallo's memorandum and all of the letters from family and friends annexed to said memorandum (A84). However, the district court denied that motion and imposed a guideline sentence (A92).

On this record, counsel cannot identify any procedural error in the district court's proper understanding of its discretion to impose a non-Guidelines sentence after *United States v. Booker*.

### 3. The Court Imposed a Sentence on Mr. Cavallo Which Was Substantively Reasonable

Where, as here, the procedural reasonableness is found, the Court has held that it will set aside a district court's substantive determination of a reasonable sentence "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) <u>quoting</u> *United States v. Rigas*, 490 F.3d 208, 238 (2d

Cir. 2007).

This Court affirmed a sentence below the lower limit of the sentencing guideline range based on the sentencing court's "gut feeling" that the defendant had turned himself around. *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006). This Court has also affirmed sentences significantly above the guideline range. *See, e.g., United States v. Pope*, 554 F.3d 240, 247 (2d Cir. 2009).

Since the sentence imposed, 51 months, was the lower end of the sentencing guideline range, counsel has no basis on which to argue it is not outside the range of permissible sentences or otherwise substantively unreasonable.

## <u>CONCLUSION</u>

For the foregoing reasons, counsel's accompanying Motion to Be Relieved should be granted.

Dated:      Garden City, New York
              July 16, 2012

                              Respectfully submitted,

                              /s/ Peter J. Tomao
                              PETER J. TOMAO, ESQ. (PT6409)
                              Attorney for Defendant-Appellant
                              John Cavallo
                              226 Seventh Street Suite 302
                              Garden City, New York 11530
                              (516) 877-7015

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that the foregoing brief complies with the requirements of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. The typeface used was 14 Point Times New Roman. According to the word processing system used to prepare this brief, the number of words in the brief is 6,651.

Dated:     Garden City, New York
           July 17, 2012

                                        Respectfully submitted,

                                        Peter J. Tomao, Esq.
                                        Attorney for Defendant-
                                        Appellant John Cavallo
                                        226 Seventh Street, Suite 302
                                        Garden City, New York 11530
                                        (516) 877-7015