# 12-1163-CR

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

FRED ALESI, AKA WHINEY, ANTHONY ARCURI, AKA TONY, ROBERT BERLINER, AKA BACALA, LAWRENCE BETRO, FRANKLIN CAMARANO, ANTHONY CAVEZZA, AKA TONY BAGELS, FRANCIS COSTELLO, DOMINICK DELIO, ROBERT DITO, THOMAS DITTA, FRANK POLITI, AKA FRANKIE P, AKA FRANKIE CAP, TONY SABBAGH, AKA TONY O, AYUB SAYED, AKA ADAM, GIOVANNI VELLA, AKA JOHN VELLA, AKA MOUSEY, AKA LITTLE JOHN, CARLOS ZAMBRANO,

*Defendants,*

*and*

JOHN CAVALLO, AKA JACKIE CAVALLO, AKA LITTLE JOHN,

*Defendant-Appellant.*

*On Appeal from the United States District Court*
*for the Eastern District of New York (Central Islip)*

## JOINT APPENDIX

UNITED STATES ATTORNEY'S OFFICE,
EASTERN DISTRICT OF NEW YORK
*Attorneys for Appellee*
271 Cadman Plaza East
Brooklyn, New York 11201
718-254-6176

PETER J. TOMAO, ESQ.
*Attorney for Defendant-Appellant*
226 7th Street, Suite 302
Garden City, New York 11530
516-877-7015

**Table of Contents**

| | Page |
|---|---|
| District Court Docket Entries | A1 |
| Superseding Indictment, dated January 11, 2011 | A6 |
| Plea Agreement, dated July 14, 2011 | A45 |
| Plea Transcript held before the Honorable Leonard D. Wexler on July 14, 2011 | A58 |
| Sentencing Transcript held before the Honorable Leonard D. Wexler on March 16, 2012 | A74 |
| Judgment in a Criminal Case, dated March 16, 2012 | A96 |
| Notice of Appeal, dated March 23, 2012 | A101 |

APPEAL,CUSTAPP,MJSELECT-ARL

**U.S. District Court**
**Eastern District of New York (Central Islip)**
**CRIMINAL DOCKET FOR CASE #: 2:11-cr-00029-LDW-6**

Case title: USA v. Alesi et al

Date Filed: 01/11/2011
Date Terminated: 03/19/2012

---

Assigned to: Judge Leonard D. Wexler

**Defendant (6)**

**John Cavallo**
*TERMINATED: 03/19/2012*
*also known as*
Jackie Cavallo
*TERMINATED: 03/19/2012*
*also known as*
Liitle John
*TERMINATED: 03/19/2012*

represented by **Peter J. Tomao**
Law Office of Peter J. Tomao
226 Seventh Street
Suite 302
Garden City, NY 11530
(516) 877-7021
Fax: 516-877-7021
Email: ptomao@tomaolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| Pending Counts | Disposition |
|---|---|
| I18:1951(a), 3551 et seq. 18:981(a)(1)(c), 1955(d), 21:853(p),28:2461 (c) NTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE and Forfeiture Allegation (6) | Imprisonment: Fifty One (51) months, credit for time served; Supervised Release: Three (3) years; Special Assessment: $100.00 |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| 18:1955(a) and 2, 18:1951(a),18:1952 18:1952(a)(1)(A) and 2, 18:1962(d), 1963 and 3551 et seq. 18:1963(a), 1963 (m)ILLEGAL GAMBLING and Forfeiture Allegation (1) | Dismissed on the motion of the United States |
| 18:1955(a), 2 and 3551 et seq. 18:981 (a)(1)(c), 1955(d), 21:853(p),28:2461 (c) ILLEGAL GAMBLING and | Dismissed on the motion of the United |

| | |
|---|---|
| Forfeiture Allegation<br>(3) | States |
| 18:1951(a) and 3551 et seq. 18:981(a)(1)(c), 1955(d), 21:853(p),28:2461 (c) INTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE and Forfeiture Allegation<br>(4) | Dismissed on the motion of the United States |
| 18:1955(a) 2 and 3551 et seq. 18:981(a)(1)(c), 1955(d), 21:853(p),28:2461 (c) ILLEGAL GAMBLING and Forfeiture Allegation<br>(5) | Dismissed on the motion of the United States |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

**USA** represented by **Amir Toossi**
United States Attorneys Office
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6176
Fax: 718-254-6605
Email: amir.toossi@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Laura D. Mantell**
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
718-254-6253
Fax: 718-254-6081
Email: laura.mantell@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2011 | 1 | SEALED INDICTMENT as to Fred Alesi (1) count(s) 2, 17, Anthony Arcuri (2) count(s) 18, Robert Berliner (3) count(s) 2, 7, 10-11, 12, 17, Lawrence Betro (4) count(s) 2, 7, 10-11, 17, Frankiln Camarano (5) count(s) 4, 6, John Cavallo (6) count(s) 1, 3, 4, 5, 6, Anthony Cavezza (7) count(s) 2, 7, Francis |

| | | |
|---|---|---|
| | | Costello (8) count(s) 13-16, Dominick Delio (9) count(s) 1, 8-9, 13-16, Robert Dito (10) count(s) 2, 8, 11, 12, Thomas Ditta (11) count(s) 2, 7, 10-11, 17, Frank Politi (12) count(s) 1, 4, 8-9, 13-16, Anthony Sabbagh (13) count(s) 8-9, 13-16, Ayub Sayed (14) count(s) 18, Giovanni Vella (15) count(s) 1, 3, 4, 5, 6, Carlos Zambrano (16) count(s) 2, 7, 10-11, 17. (Attachments: # 1 Grand Jury Presentment, # 2 Criminal Information Sheet) (Romano, Daniel) (Additional attachment(s) added on 1/14/2011: # 3 Notice of Related Case Designation) (Romano, Daniel). (Entered: 01/14/2011) |
| 01/20/2011 | 19 | Order to Unseal Case as to Fred Alesi, Anthony Arcuri, Robert Berliner, Lawrence Betro, Frankiln Camarano, John Cavallo, Anthony Cavezza, Francis Costello, Dominick Delio, Robert Dito, Thomas Ditta, Frank Politi, Anthony Sabbagh, Ayub Sayed, Giovanni Vella, Carlos Zambrano. It is ordered that the indictment and arrest warrants in this action be unsealed. Ordered by Magistrate Judge Arlene R. Lindsay on 1/20/2011. (Mahon, Cinthia) (Entered: 01/31/2011) |
| 01/20/2011 | | INDICTMENT UNSEALED as to Fred Alesi, Anthony Arcuri, Robert Berliner, Lawrence Betro, Frankiln Camarano, John Cavallo, Anthony Cavezza, Francis Costello, Dominick Delio, Thomas Ditta, Frank Politi, Tony Sabbagh, Ayub Sayed, Giovanni Vella, Carlos Zambrano. (Mahon, Cinthia) (Entered: 06/24/2011) |
| 01/21/2011 | 46 | Minute Entry for proceedings held before Magistrate Judge Arlene R. Lindsay: Defendant (in custody) and CJA Counsel, Peter Tomao, present via telephone from Nassau University Medical Center where defendant is hospitalized. Government: Amir Toossie Initial Appearance as to John Cavallo held on 1/21/2011 at 2:50 pm. Arraignment as to John Cavallo (6) Count 1,3,4,5,6 held on 1/21/2011. Plea entered by John Cavallo (6) Count 1,3,4,5,6: Not Guilty as to all counts of the Indictment. Order of detention entered. (Tape #2:50-3:20.) (Padilla, Kristin) (Entered: 02/03/2011) |
| 01/21/2011 | 47 | ORDER OF DETENTION PENDING TRIAL as to John Cavallo. See Order for the Court's findings. Ordered by Magistrate Judge Arlene R. Lindsay on 1/21/2011. (Padilla, Kristin) (Entered: 02/03/2011) |
| 01/21/2011 | 50 | CJA 23 Financial Affidavit by John Cavallo. (Glueckert, Lisa) (Entered: 02/03/2011) |
| 02/01/2011 | 45 | Minute Entry for proceedings held before Judge Joanna Seybert: CRIMINAL CAUSE FOR BAIL APPLICATION/REVIEW OF MAG. JUDGE ORDER as to John Cavallo held on 2/1/2011. Deft present in custody with CJA counsel Peter Tomao. AUSA Amir Toosi for gov't. P.T.S.O.- Marnie Gerardino. Case called. All counsel present. Conference held. Deft continued in custody. Mag. J. Lindsay's detention order stands. Bail application denied. (Court Reporter Dominick Tursi.) (Glueckert, Lisa) (Entered: 02/03/2011) |
| 02/08/2011 | 52 | Letter MOTION for Discovery *and disclosure of "Brady" and "Jencks" material* by John Cavallo. (Tomao, Peter) (Entered: 02/08/2011) |
| 02/09/2011 | | NOTICE OF HEARING as to Fred Alesi, Anthony Arcuri, Robert Berliner, Lawrence Betro, Frankiln Camarano, John Cavallo, Anthony Cavezza, Francis Costello, Dominick Delio, Robert Dito, Thomas Ditta, Frank Politi, |

| | | |
|---|---|---|
| | | Tony Sabbagh, Ayub Sayed, Giovanni Vella, Carlos Zambrano, Status Conference set for 2/18/2011 @11:00 am is adjourned to 2/24/2011 11:00 AM in Courtroom 940 before Senior Judge Leonard D. Wexler. (Kharjie, Josiah) (Entered: 02/09/2011) |
| 02/10/2011 | 54 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John Cavallo held on JANUARY 21, 2011,CRIMINAL CAUSE FOR ARRAIGNMENT HELD before MAG. JUDGE ARLENE R. LINDSAY. Court Reporter/Transcriber ROSALIE LOMBARDI @ 3859 TIANA STREET SEAFORD, NEW YORK. 11783, Telephone number (516) 358-7352 or LINDA FERRARA (718) 987-4285. Tape Number: FTR/DRIVE/TIME:. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/3/2011. Redacted Transcript Deadline set for 3/14/2011. Release of Transcript Restriction set for 5/11/2011.KEITH ANGELO JONES. (Jones, Keith) (Entered: 02/10/2011) |
| 02/17/2011 | 55 | Letter MOTION to Compel *production of medical records* by John Cavallo. (Tomao, Peter) (Entered: 02/17/2011) |
| 02/24/2011 | 57 | Letter *in support of bail* as to John Cavallo (Attachments: # 1 Supplement) (Tomao, Peter) (Entered: 02/24/2011) |
| 02/24/2011 | 59 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler:Status Conference as to Fred Alesi, Anthony Arcuri, Robert Berliner, Lawrence Betro, Frankiln Camarano, John Cavallo, Anthony Cavezza, Francis Costello, Dominick Delio, Robert Dito, Thomas Ditta, Frank Politi, Tony Sabbagh, Ayub Sayed, Giovanni Vella, Carlos Zambrano held on 2/24/2011. Appearances: AUSA Amir Toosi and Special Attorney Spiros A. Moustakas for government; federal defender Randi Chavis by Lisa Hoyes, Glenn A. Obedin by Leonard Lato, Edward Jenks by Alan Nelson, James A. Pascarella, Barry S. Zone, Peter Romao, Anthony Lapinta, Raymond G. Perini, Leonard Tartamella, Anthony Senft, James O'Rourke, Steve Zissou, Terrence Buckley, Allen Neilson, Thomas Liotti by Drummond Smith, Richard Haley by Terrance Buckley for defts. Case called. Counsel present. Defts present except deft Sayed (appearance waived). Deft Politi first appearance, waived reading of charges, and enters a plea of not guilty. Deft Politi released on $1 million secured bond. Mr. Tomao's application to be appointed pursuant to CJA argues- decision reserved. Deft Cacallo's application for bail argued- decision reserved. Government's motion to deemed this case a "complex" case is granted. All defts consented. Deft Sayed continued in custody. Case is adjourned to April 29, 2011 @ 11:00 a.m. for further status conference. Proceeding concluded. (Court Reporter Perry Auerbach.) (Glueckert, Lisa) (Entered: 03/01/2011) |
| 03/10/2011 | 61 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler: Status Conference as to John Cavallo held on 3/10/2011. Appearances: AUSA Amir Toossi and special attorney Spiros A. Moustakas for government and CJA Peter J. Tomao for deft. Case called. Counsel and deft present. Mr. Tomao's application to be appointed pursuant to CJA argues- Granted. Deft Cavallo's application for bail - denied. Continued in custody. Case is |

| | | |
|---|---|---|
| | | adjourned to April 29, 2011 @ 11:00 a.m. for further status conference. Proceeding concluded. (Court Reporter Harry Rapaport.) (Glueckert, Lisa) (Entered: 03/11/2011) |
| 03/11/2011 | 62 | Letter MOTION for Disclosure *from the Metropolitan Detention Center* by John Cavallo. (Tomao, Peter) (Entered: 03/11/2011) |
| 04/29/2011 | 71 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler:Status Conference as to Fred Alesi, Anthony Arcuri, Robert Berliner, Lawrence Betro, John Cavallo, Anthony Cavezza, Francis Costello, Dominick Delio, Robert Dito, Thomas Ditta, Frank Politi, Tony Sabbagh, Giovanni Vella, Carlos Zambrano held on 4/29/2011. Appearances: AUSA Amir Toossi and Special Attorney Spiros A. Moustakas, Esq. for government and federal defender Randi Chavis, CJA defense counsel Glenn A. Obedin, CJA defense counsel Edward P. Jenks, retained defense counsel James A. Pascarella, CJA defense counsel Peter J. Tomao, CJA defense counsel Leonard Lato, CJA defense counsel Anthony LaPinta, retained defense counsel Raymond G. Perini, retained defense counsel Leonard J. Tartamella, retained defense counsel Thomas H. Spreer, retained defense counsel James J. O'Rourke, CJA defense counsel Stuart J. Grossman, CJA defense counsel Terrence P. Buckley, retained defense counsel Thomas F. Liotti, and CJA defense counsel Richard D. Haley for defts. Case called. Counsel present. Defts present except defts Berliner and Politi (appearance waived). Mr. Tomao's application to be appointed pursuant to CJA granted. Mr. Grossman is appointed as CJA counsel for deft Politi. Deft Cavallo's to make application for medical records. Case deemed "Complex" case- (on consent, all defts waived speedy trial, except deft Cavallo. Jury Selection 8/1/2011. Case adjourned to June 23, 2011 @ 11:00 AM for further status conference. Proceeding concluded. (Court Reporter Dominick Tursi.) (Glueckert, Lisa) (Entered: 05/02/2011) |
| 04/29/2011 | 84 | Waiver of Speedy Trial as to John Cavallo. Time excluded from 4/29/2011 until 8/1/2011. Ordered by Senior Judge Leonard D. Wexler on 4/29/2011. (Glueckert, Lisa) (Entered: 05/18/2011) |
| 05/03/2011 | 72 | Letter MOTION to Produce *Metropolitan Detention Center* by John Cavallo. (Tomao, Peter) (Entered: 05/03/2011) |
| 05/09/2011 | 74 | Letter *pursuant to 18 USC Sec.3145(b) for review and revocation of the Permanent Order of Detention* as to John Cavallo (Tomao, Peter) (Entered: 05/09/2011) |
| 05/10/2011 | 78 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler: Bail Hearing as to John Cavallo held on 5/10/2011. Appearances: AUSA Amir Toossi and special attorney Spiros A. Moustakas for government and CJA defense counsel Peter J. Tomao for deft. Case called. Counsel and deft present. Conference held. Deft Cavallo's application for bail heard. Bail hearing on May 16, 2011 @ 11:00 AM. Continued in custody. proceeding concluded.(Court Reporter Ellen Combs.) (Glueckert, Lisa) (Entered: 05/12/2011) |
| 05/12/2011 | 77 | Letter *requesting authorization for CJA funds to purchase transcript of Court* |

| | | |
|---|---|---|
| | | *Conference held on May 10, 2011* as to John Cavallo (Tomao, Peter) (Entered: 05/12/2011) |
| 05/13/2011 | 85 | ORDER as to John Cavallo re 77 Letter. SO ORDERED that the request for authorization for CJA funds to purchase transcript of Court Conference held on May 10, 2011 is hereby granted. Ordered by Senior Judge Leonard D. Wexler on 5/13/2011. (Glueckert, Lisa) (Entered: 05/18/2011) |
| 05/16/2011 | 79 | Letter *in response to Government's Letter dated May 12, 2011 and in further support of application for review and revocation of Permanent Order of Detention* as to John Cavallo (Tomao, Peter) (Entered: 05/16/2011) |
| 05/16/2011 | 80 | Letter *with proposed Order setting forth Court's Order on record that he be detained in Federal Medical Center* as to John Cavallo (Tomao, Peter) (Entered: 05/16/2011) |
| 05/16/2011 | 81 | Letter *requesting authorization of CJA funds to purchase Transcript of Conference* as to John Cavallo (Tomao, Peter) (Entered: 05/16/2011) |
| 05/16/2011 | 83 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler: Bail Hearing as to John Cavallo held on 5/16/2011. Appearances: AUSA Amir Toossi for government and CJA defense counsel Peter J. Tomao for deft. Case called. Counsel and deft present. Deft Cavallo's application for bail heard. Bail hearing held. Bail denied. Continued in custody. Proceeding concluded. (Court Reporter Ellen Combs.) (Glueckert, Lisa) (Entered: 05/17/2011) |
| 05/17/2011 | 82 | NOTICE OF APPEAL of Conditions of Release 87 *Appeal of Order Denying Bail* by John Cavallo (Tomao, Peter) Modified on 5/23/2011 (Russo, Eric). (Entered: 05/17/2011) |
| 05/17/2011 | | Electronic Index to Record on Appeal as to John Cavallo sent to US Court of Appeals 81 Letter, 82 Notice of Appeal - Conditions of Release, 74 Letter, 85 Order, 83 Bond Hearing, 79 Letter, 71 Status Conference, Set Hearings, 77 Letter, 59 Status Conference, Set Hearings, 47 Order of Detention, 54 Transcript,, 46 Initial Appearance, Arraignment, Plea Entered, 84 Order to Continue - Ends of Justice, 87 Order, 55 Motion to Compel, 61 Status Conference, 80 Letter, 52 Motion for Discovery, 50 Financial Affidavit - CJA23, 62 Motion for Disclosure, 78 Bond Hearing, Set Hearings, 1 Indictment (Sealed), Indictment (Sealed), Indictment (Sealed), Indictment (Sealed), 72 Motion to Produce, 57 Letter, 45 Bond Hearing, 19 Order to Unseal Case. For docket entries without a hyperlink, contact the court and we'll arrange for the document(s) to be made available to you. (Russo, Eric) (Entered: 05/23/2011) |
| 05/18/2011 | 87 | ORDER as to John Cavallo. SO ORDERED that the 47 Order of Detention is hereby modified as follows: it is hereby recommended that the deft John Cavallo is to be detained in a Federal Medical Center pending trial in this case. Ordered by Senior Judge Leonard D. Wexler on 5/18/2011. (Glueckert, Lisa) (Entered: 05/20/2011) |
| 05/25/2011 | 88 | Letter *to request the Court authorize CJA funds to purchase 2/24/11 Transcript* as to John Cavallo (Tomao, Peter) (Entered: 05/25/2011) |

| | | |
|---|---|---|
| 05/26/2011 | 89 | Letter *schedule for motions returnable on June 23, 2011* as to John Cavallo (Tomao, Peter) (Entered: 05/26/2011) |
| 05/31/2011 | 91 | Notice of MOTION to Suppress by John Cavallo. (Attachments: # 1 Affidavit in Support) (Tomao, Peter) (Entered: 05/31/2011) |
| 06/02/2011 | 93 | Letter *requesting that the Court set a trial date of August 1, 2011 with respect to defendants Camarano, Costello, Delio, Politi, Sabbagh and Vella* as to Fred Alesi, Anthony Arcuri, Robert Berliner, Lawrence Betro, Frankiln Camarano, John Cavallo, Anthony Cavezza, Francis Costello, Dominick Delio, Robert Dito, Thomas Ditta, Frank Politi, Tony Sabbagh, Ayub Sayed, Giovanni Vella, Carlos Zambrano (Toossi, Amir) (Entered: 06/02/2011) |
| 06/10/2011 | | ORDER as to John Cavallo re 89 Letter. The agreed upon motion schedule is So Ordered by Senior Judge Leonard D. Wexler on 6/10/2011. (Ausili, Peter) (Entered: 06/10/2011) |
| 06/14/2011 | 95 | RESPONSE in Opposition re 91 Notice of MOTION to Suppress (Toossi, Amir) (Entered: 06/14/2011) |
| 06/20/2011 | 96 | REPLY TO RESPONSE to Motion re 91 Notice of MOTION to Suppress (Attachments: # 1 Exhibit) (Tomao, Peter) (Entered: 06/20/2011) |
| 06/23/2011 | 97 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler:Status Conference as to Fred Alesi, Anthony Arcuri, Robert Berliner, Lawrence Betro, Frankiln Camarano, John Cavallo, Anthony Cavezza, Francis Costello, Dominick Delio, Thomas Ditta, Frank Politi, Tony Sabbagh, Giovanni Vella, Carlos Zambrano held on 6/23/2011. Appearances: Spiros A. Moustakas for government and federal defender Randi Chavis, CJA Glenn Obedin, CJA Edward Jenks by Anthony LaPinta, retained defense counsel James Pacarella, retained defense counsel Barry Zone, retained defense counsel Peter Tomao, CJA Leonard Lato, CJA Anthony LaPinta, retained defense counsel Raymond Perini, retained defense counsel James O'Rourke, retained defense counsel Stuart Grossman, CJA Terrance Buckley by Richard Haley, retained defense counsel Thomas Liotti by Drummond Smith, and CJA Richard Haley for defts. Case called. Counsel present. Defts present except defts Berliner, Politi, and Cavallo (appearances waived). Case deemed a "complex" case. All defts waived speedy trial as indicated on the record. Next status conference 7/21/2011 @ 11:00 AM. Status conference as to deft Politi 7/6/2011 @ 11:00 AM. Status conference as to deft Cavallo 7/7/2011 @ 11:00 AM. Bail continued. Jury selection August 1, 2011 @ 9:00 AM. Proceeding concluded. (Court Reporter Harry Rapaport.) (Glueckert, Lisa) (Entered: 06/27/2011) |
| 07/07/2011 | 107 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler: Status Conference as to John Cavallo held on 7/7/2011. Appearances: AUSA Amir Toossi for government and CJA Peter J. Tomao for deft. Case called. Counsel and deft present. Conference held. Continued in custody. Trial August 1, 2011. Next conference 7/21/2011 @ 11:00 AM. Proceeding concluded. (Court Reporter Owen Wicker.) (Glueckert, Lisa) (Entered: 07/12/2011) |
| 07/13/2011 | 109 | First MOTION in Limine *to introduce evidence of the defendant John* |

| | | |
|---|---|---|
| | | *Cavallo's association with and membership in the Gambino crime family* by USA as to John Cavallo. (Toossi, Amir) (Entered: 07/13/2011) |
| 07/14/2011 | 113 | Minute Entry for proceedings held before Senior Judge Leonard D. Wexler: Re-Pleading Hearing as to John Cavallo held on 7/14/2011. Appearances: AUSA Amir Toossi and Spiros A. Moustakas for government and CJA Peter J. Tomao for deft. Case called. Deft appears with counsel. Deft sworn. Deft rearraigned. Deft informed of rights. Deft states true name to be: John Cavallo. Deft withdraws not guilty plea and enters guilty plea to Count 6 of indictment. Court finds factual basis for the plea. Plea accepted. Deft continued in custody. Deft and counsel is directed to report to the Probation Dept for preparation for PSI. Sentencing date to be fixed by the Probation Dept. Proceeding concluded.(Court Reporter Mary Ann Steiger.) (Glueckert, Lisa) (Entered: 07/18/2011) |
| 07/14/2011 | 115 | STANDARD PLEA FORM as to John Cavallo. (Glueckert, Lisa) (Entered: 07/21/2011) |
| 07/19/2011 | 118 | MANDATE of USCA (certified copy) as to John Cavallo DENYING APPELLANT'S MOTION FOR BAIL. USCA 11-2081 (Romano, Daniel) (Entered: 07/28/2011) |
| 08/10/2011 | 119 | CJA 24 as to John Cavallo: Authorization to Pay Harry Rapaport Voucher # 110711000023.. Ordered by Senior Judge Leonard D. Wexler on 4/21/2011. (Rios, Laura) (Entered: 08/10/2011) |
| 08/17/2011 | 121 | CJA 24 as to John Cavallo: Authorization to Pay Perry Auerbach Voucher # 110712000032.. Ordered by Senior Judge Leonard D. Wexler on 6/27/2011. (Rios, Laura) (Entered: 08/17/2011) |
| 01/27/2012 | 152 | Proposed MOTION for Forfeiture of Property *PROPOSED PRELIMINARY ORDER of FORFEITURE, in which the government seeks to forfeit certain items of the defendant* by USA as to John Cavallo. (Mantell, Laura) (Entered: 01/27/2012) |
| 02/02/2012 | 159 | PRELIMINARY ORDER OF FORFEITURE; granting 152 Motion for Forfeiture of Property as to John Cavallo (6). The Defendant shall forfeit to the United States all of his right, title and interest in the Forfeited Assets and the Forfeiture Money Judgment pursuant to 18 U.S.C. § 981(a) (1) (C), 18 U.S.C. § 1955(d) and 28 U.S.C. § 2461(c), as property constituting or derived from, proceeds obtained directly or indirectly, as a result of his violation of 18 U.S.C. § 1955(a), and/or propertyused in violation of 18 U.S.C. § 195S(a), and/or as substitute assets purs. to 21 U.S.C. 853(p); Upon entry of this Preliminary Order of Forfeiture, the United States Attorney General, or his designee, is authorized to seize the Forfeited Assets and to conduct any proper discovery, in accordance with Fed. R. Crim. P. 32.2(b) (3) and (c), and to commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this Order; The United States Attorney's Office shall publish notice of this Order, in accordance with the custom and practice in this district, on the government website www.forfeiture.gov, of its intent to dispose of the Forfeited Assets in such a manner as the Attorney General or his designee may direct. The United States |

| | | |
|---|---|---|
| | | may, to the extent practicable, provide direct written notice to any person known or alleged to have an interest in the Forfeited Assets as a substitute for published notice as to those persons so notified. Any person, other than the Defendant asserting a legal interest to the Forfeited Assets may, within thirty (30) days of the final publication of notice or receipt of notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of his or her alleged interest in the property, and for an amendment of the order of forfeiture, pursuant to 21 U.S.C. § 853(n), and as further set forth herein. The United States shall have clear title to the Forfeited Assets identified above following the Court's disposition of all third-party interests, or, if none, following the expiration of the period provided in 21 U.S.C. § 853 (n) (2).Pursuant to the Fed. R. Crim. P. 32.2(b) (4) (A), this Preliminary Order of Forfeiture shall become final as to the Defendant upon entry of this Preliminary Order of Forfeiture, and shall be made part of the sentence and included in the judgment. If no third party files a timely claim, this Preliminary Order, together with Supplemental Preliminary Orders of Forfeiture, if any, shall become the Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2). This Preliminary Order shall be binding upon the Defendant and the successors, administrators, heirs, assigns and transferees of the Defendant, and shall survive the bankruptcy of any of them. The Court shall retain jurisdiction of this action to ensure compliance with the terms of this Preliminary Order of Forfeiture. The Clerk of the Court is directed to send, by inter-office mail, five certified copies of this executed Preliminary Order of Forfeiture to FSA Asset Forfeiture Paralegal Brian Gappa, United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Central Islip, New York 11722.(Ordered by Senior Judge Leonard D. Wexler, on 2/2/2012 ) (Fagan, Linda). (Entered: 02/03/2012) |
| 03/14/2012 | 172 | SENTENCING MEMORANDUM by USA as to John Cavallo (Toossi, Amir) (Entered: 03/14/2012) |
| 03/16/2012 | 173 | Minute Entry for proceedings held on 3/16/2012 at 11:00 a.m. before Senior Judge Leonard D. Wexler; For Criminal Cause for Sentencing; Title: USA v. Alesi, Et al.; Appearances: For Gov't.: Amir Toossi, AUSA; For Deft John Cavallo - 06 (Custody): Peter J. Tomao, Esq. (CJA); Court Reporter: Mary Ann Steiger. Case called. Deft appears with counsel. Sentencing held. Sentence: Fifty one (51) months, with credit for time served; Three (3) years supervised release. Deft sentenced on count 6 of 18 count Indictment. Special Assessment: $100.00. The Government's motion to dismiss counts 1, 3, 4 & 5 of the Indictment is granted by the Court. Deft remanded to U.S. Marshal. (Fagan, Linda) (Entered: 03/19/2012) |
| 03/19/2012 | 175 | JUDGMENT as to John Cavallo; the Deft.: pleaded guilty to count 6 of a 18-count Indictment. Imprisonment: The deft is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: Fifty one (51) months. Deft to receive credit for time served. The court makes the following recommendations to the Bureau of Prisons: FMC Devens, M.A. The deft is remanded to the custody of the Untied States Marshal. Supervised Release: Upon release from imprisonment, the deft shall be on supervised release for a term of: Three (3) years. The deft shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. Criminal |

| | | |
|---|---|---|
| | | Monetary Penalties: The deft must pay the following total criminal monetary penalties: Assessment: $100.00; Fine: $0.00; Restitution: $0.00. Schedule of Payments: Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows: Lump sum payment of $100.00 due immediately. The defendant shall forfeit the defendant's interest in the following property to the United States: See Attached Preliminary Order of Forfeiture, dated 2/2/2012. Count(s) 1, 3, 4 & 5 are dismissed on the motion of the United States. ( Ordered by Senior Judge Leonard D. Wexler on 3/19/2012.) (Attachments: # 1 Preliminary Order of Forfeiture) (Fagan, Linda) (Entered: 03/23/2012) |
| 03/22/2012 | 174 | Letter MOTION for Reconsideration re 173 Sentencing,, *reconsider the denial of request to file a notice of appeal in forma pauperis* by John Cavallo. (Tomao, Peter) (Entered: 03/22/2012) |
| 03/23/2012 | 177 | NOTICE OF APPEAL by John Cavallo re 175 Judgment,,,,, (Tomao, Peter) (Entered: 03/23/2012) |
| 03/23/2012 | | Electronic Index to Record on Appeal as to John Cavallo sent to US Court of Appeals 177 Notice of Appeal - Final Judgment Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Russo, Eric) (Entered: 03/26/2012) |
| 04/26/2012 | 184 | ORDER denying 174 Motion for Reconsideration as to John Cavallo (6). It is so ordered that the Notice of Appeal is denied on the grounds that one was already filed on March 19, 2012, which was two days before the instant request was made.. Ordered by Senior Judge Leonard D. Wexler on 4/26/2012. (Padilla, Kristin) (Entered: 04/27/2012) |
| 05/02/2012 | 185 | SENTENCING MEMORANDUM by John Cavallo (Tomao, Peter) (Entered: 05/02/2012) |
| 06/11/2012 | 208 | MOTION for Forfeiture of Property *of items listed in the proposed Final Order of Forfeiture* by USA as to John Cavallo. (Mantell, Laura) (Entered: 06/11/2012) |
| 06/11/2012 | 215 | FINAL ORDER OF FORFEITURE as to John Cavallo granting 208 Motion for Forfeiture of Property as to John Cavallo (6); the Forfeited Assets and the Forfeiture Money Judgment are hereby condemned, forfeited and vested in the United States of America, and shall be disposed of according to law as property constituting or derived from, proceeds obtained directly or indirectly, as a result of his violation of 18 U.S.C. § 1955(a), and/or property used in violation of 18 U.S.C. § 1955(a), and/or as substitute assets pursuant to 21 U.S.C. § 853(p); and United States Marshals Service and all of its duly authorized agents and/or contractors are hereby authorized to dispose of the Forfeiture Money Judgment and the Forfeited Assets in accordance with all laws and regulations; and that the United States District Court for the Eastern District of New York shall retain jurisdiction in the case for the purpose of enforcing the Preliminary Order and this Final Order of Forfeiture and any supplemental final orders of forfeiture as may be necessary; and that, pursuant to Rule 32.2(b) (4) (A) of the Federal Rules of Criminal Procedure, this Final |

| | | |
|---|---|---|
| | | Order of Forfeiture shall become final as to the Defendant and at the time of sentencing shall be made part of the Defendant's sentence and included in his judgment of conviction; and that that the Clerk of the Court shall forward five certified copies of this Final Order to the United States Attorney's Office, 610 Federal Plaza, 5th Floor, Central Islip, New York 11722, Attn: FSA Asset Forfeiture Paralegal Kristen Lake. ( Ordered by Judge Leonard D. Wexler on 6/11/2012. ) c/m (Fagan, Linda) (Entered: 06/15/2012). Ordered by Judge Leonard D. Wexler on 6/11/2012. ) c/m (Fagan, Linda) (Entered: 06/15/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/13/2012 11:54:23 | | | |
| **PACER Login:** | pp0060 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-cr-00029-LDW |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 11 2011 ★
BROOKLYN OFFICE

AB:AHT
F.#2009R02325

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

FRED ALESI,
also known as
"Whiney,"
ANTHONY ARCURI,
also known as "Tony,"
ROBERT BERLINER,
also known as "Bacala,"
LAWRENCE BETRO,
FRANKLIN CAMARANO,
JOHN CAVALLO,
also known as
"Jackie Cavallo" and
"Little John,"
ANTHONY CAVEZZA,
also known as "Tony Bagels,"
FRANCIS COSTELLO,
DOMINICK DELIO,
ROBERT DITO,
THOMAS DITTA,
FRANK POLITI,
also known as
"Frankie P" and "Frankie Cap,"
ANTHONY SABBAGH,
also known as "Tony O,"
AYUB SAYED,
also known as "Adam,"
GIOVANNI VELLA,
also known as
"John Vella,"
"Mousey" and
"Little John," and
CARLOS ZAMBRANO,

Defendants.

- - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. ______________
(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 1511(a), 1511(d), 1951(a), 1952(a)(1)(A), 1955(a), 1955(d), 1962(d), 1963, 1963(a), 1963(m), 2 and 3551 et seq; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

WEXLER, J.

LINDSAY, M.J.

THE GRAND JURY CHARGES:

INTRODUCTION TO ALL COUNTS

At all times relevant to this Indictment, unless otherwise indicated:

The Enterprise

1. The members and associates of La Cosa Nostra constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. La Cosa Nostra engaged in, and its activities affected, interstate and foreign commerce. La Cosa Nostra was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families - the Bonanno, Colombo, Gambino, Genovese and Luchese crime families - were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decalvacante organized crime family of La Cosa Nostra, operated principally in New Jersey, but from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. Each La Cosa Nostra crime family had a hierarchy and structure. The head of each crime family was known as the "boss." The crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, a La Cosa Nostra crime family would be overseen by a

"panel" of crime family members that did not include the boss, underboss and/or consigliere.

5. Below the administration of each crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6. Only members of a La Cosa Nostra crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of a La Cosa Nostra crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of a La Cosa Nostra crime family, but who nonetheless engaged in criminal activity for, and under the protection of, a crime family.

7. Many requirements existed before an associate could become a member of a La Cosa Nostra crime family. The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's

administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

Methods and Means of the Enterprise

8. The principal purpose of La Cosa Nostra and each of its crime families was to generate money for its members and associates. This purpose was implemented by members and associates of the crime families through various criminal activities, including drug trafficking, robbery, extortion, illegal gambling and loansharking. The members and associates of the crime families also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of La Cosa Nostra was to generate money for its members and associates, the members and associates at times used the resources of the crime families to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the crime families. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of La Cosa Nostra engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of the crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of La Cosa Nostra often coordinated criminal activity with members and associates of other organized crime families.

The Defendants

12. At various times relevant to this Indictment, the defendant JOHN CAVALLO, also known as "Jackie Cavallo" and "Little John," was a soldier within the Gambino crime family.

13. At various times relevant to this Indictment, the defendant FRANK POLITI, also known as "Frankie P" and "Frankie Cap," was a soldier within the Colombo crime family.

14. At various times relevant to this Indictment, the defendant GIOVANNI VELLA, also known as "John Vella," "Mousey" and "Little John," was an associate within the Gambino crime family.

15. At various times relevant to this Indictment, the defendant DOMINICK DELIO was an associate within the Colombo crime family.

16. At various times relevant to this Indictment, the defendant ROBERT DITO was an officer and employee of the Suffolk County Police Department, assigned to the Emergency Services Unit. It was part of the official duties of the defendant ROBERT DITO to investigate and enforce the laws of the State of New York concerning, among other things, the operation of illegal gambling businesses. It was also part of the official duties of the defendant ROBERT DITO to participate in enforcement actions, or "raids," of locations in which illegal gambling businesses were known to be operating.

COUNT ONE
(Racketeering Conspiracy)

17. The allegations contained in paragraphs 1 through 15 are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between January 2007 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN CAVALLO, also known as "Jackie Cavallo" and "Little John," DOMINICK DELIO, FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and GIOVANNI VELLA, also known as "John Vella," "Mousey" and "Little John," together with others, being persons employed by and associated with La Cosa Nostra, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

19. The pattern of racketeering activity through which the above-named defendants, together with others, agreed to conduct the affairs of the enterprise consisted of Racketeering Acts One through Ten, set forth below in paragraphs 20 through 33. The defendants agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Illegal Gambling - 9th Avenue Club)

20. In or about 2007, within the Eastern District of New York, the defendants JOHN CAVALLO and GIOVANNI VELLA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on 9th Avenue in Bohemia, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT TWO
(Illegal Gambling - Castle Collision Club)

21. In or about 2008, within the Eastern District of New York, the defendants JOHN CAVALLO and GIOVANNI VELLA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located in the Castle Collision Autobody Shop in Westbury, New York, which operated in violation of the laws of

the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT THREE
(Extortion Conspiracy)

22. The defendants JOHN CAVALLO, FRANK POLITI and GIOVANNI VELLA agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Three:

A. State Extortion Conspiracy

23. In or about and between 2007 and 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN CAVALLO, FRANK POLITI and GIOVANNI VELLA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #1, John Doe #2, John Doe #3, John Doe #4 and John Doe #5, managers and owners of illegal gambling operations whose identities are known to the Grand Jury, to deliver such property by instilling in them a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to some person in

the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B. Federal Extortion Conspiracy

24. In or about and between 2007 and 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN CAVALLO, FRANK POLITI and GIOVANNI VELLA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from John Doe #1, John Doe #2, John Doe #3, John Doe #4 and John Doe #5, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Section 1951(a).

RACKETEERING ACT FOUR
(Extortion Conspiracy)

25. The defendants JOHN CAVALLO and GIOVANNI VELLA agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Four:

A.   State Extortion Conspiracy

26.   In or about and between 2008 and 2010, both
dates being approximate and inclusive, within the Eastern
District of New York, the defendants JOHN CAVALLO and GIOVANNI
VELLA, together with others, did knowingly and intentionally
conspire to steal property by extortion, in that the defendants
and others agreed to obtain property, to wit: money, by
compelling and inducing John Doe #6 and John Doe #7, managers and
owners of illegal gambling operations whose identities are known
to the Grand Jury, to deliver such property by instilling in them
a fear that, if the property were not so delivered, one or more
persons would (1) cause physical injury to some person in the
future and (2) cause damage to property, contrary to New York
Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii)
and 105.10.

B.   Federal Extortion Conspiracy

27.   In or about and between 2008 and 2010, both
dates being approximate and inclusive, within the Eastern
District of New York, the defendants JOHN CAVALLO and GIOVANNI
VELLA, together with others, did knowingly and intentionally
conspire to obstruct, delay and affect commerce, and the movement
of articles and commodities in commerce, by extortion, in that
the defendants and others agreed to obtain property, to wit:
money, from John Doe #6 and John Doe #7, with their consent,

which consent was to be induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Section 1951(a).

RACKETEERING ACT FIVE
(Illegal Gambling - Keyland Avenue Club)

28. In or about and between January 2009 and May 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants FRANK POLITI and DOMINICK DELIO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Keyland Avenue in Bohemia, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT SIX
(Illegal Gambling - Knickerbocker Avenue Club)

29. In or about and between May 2009 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants FRANK POLITI and DOMINICK

DELIO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Knickerbocker Avenue in Bohemia, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT SEVEN
(Interstate Transportation in-aid-of Racketeering)

30. On or about September 21, 2009, within the Eastern District of New York and elsewhere, the defendants FRANK POLITI and DOMINICK DELIO, together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling business, in violation of Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and 20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and

carrying on of such unlawful activity, contrary to Title 18, United States Code, Sections 1952(a)(1)(A) and 2.

RACKETEERING ACT EIGHT
(Interstate Transportation in-aid-of Racketeering)

31. On or about September 28, 2009, within the Eastern District of New York and elsewhere, the defendants FRANK POLITI and DOMINICK DELIO, together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling business, in violation of Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and 20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Sections 1952(a)(1)(A) and 2.

RACKETEERING ACT NINE
(Interstate Transportation in-aid-of Racketeering)

32. On or about October 20, 2009, within the Eastern District of New York and elsewhere, the defendants FRANK POLITI and DOMINICK DELIO, together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling business, in violation of Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and

20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Sections 1952(a)(1)(A) and 2.

RACKETEERING ACT TEN
(Interstate Transportation in-aid-of Racketeering)

33. On or about October 26, 2009, within the Eastern District of New York and elsewhere, the defendants FRANK POLITI and DOMINICK DELIO, together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling business, in violation of Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and 20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Sections 1952(a)(1)(A) and 2.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT TWO
(Conspiracy to Operate Illegal Gambling Businesses)

34. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

35. In or about and between January 2007 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRED ALESI, also known as "Whiney," ROBERT BERLINER, also known as "Bacala," LAWRENCE BETRO, ANTHONY CAVEZZA, also known as "Tony Bagels," ROBERT DITO, THOMAS DITTA and CARLOS ZAMBRANO, together with others, did knowingly and willfully conspire to conduct, finance, manage, supervise, direct and own all or part of one or more illegal gambling businesses, to wit: gambling businesses involving illegal card games, the identities of which are known to the Grand Jury, located in Suffolk County, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such businesses and which remained in substantially continuous operation for periods in excess of thirty days and had gross revenues of at least $2,000 in any single day, contrary to Title 18, United States Code, Section 1955(a).

36. In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York, the defendants FRED ALESI, ROBERT BERLINER, LAWRENCE BETRO, ANTHONY CAVEZZA and ROBERT DITO, THOMAS DITTA and CARLOS ZAMBRANO, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a. In or about and between January 2009 and September 2009, both dates being approximate and inclusive, the defendants ROBERT BERLINER, LAWRENCE BETRO, ANTHONY CAVEZZA, THOMAS DITTA and CARLOS ZAMBRANO operated a gambling club on Oser Avenue in Hauppauge, New York.

b. In or about August 2009, the defendant ROBERT DITO had a telephone conversation regarding the execution of search warrants by the Suffolk County Police Department.

c. In or about and between June 2009 and November 2009, both dates being approximate and inclusive, the defendants FRED ALESI, ROBERT BERLINER, LAWRENCE BETRO, THOMAS DITTA and CARLOS ZAMBRANO operated a gambling club on Veterans Memorial Highway in Bohemia, New York.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT THREE
(Illegal Gambling - 9th Avenue Club)

37. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

38. In or about 2007, within the Eastern District of New York, the defendants JOHN CAVALLO, also known as "Jackie Cavallo" and "Little John," and GIOVANNI VELLA, also known as "John Vella," "Mousey" and "Little John," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on 9th Avenue in Bohemia, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT FOUR
(Extortion Conspiracy)

39. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

40. In or about and between July 2007 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendants FRANKLIN CAMARANO, JOHN CAVALLO, also known as "Jackie Cavallo" and "Little John," FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and GIOVANNI VELLA, also known as "John Vella," "Mousey" and "Little John," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from John Doe #1, John Doe #2, John Doe #3, John Doe #4 and John Doe #5, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT FIVE
(Illegal Gambling - Castle Collision Club)

41. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

42. In or about 2008, within the Eastern District of New York, the defendants JOHN CAVALLO, also known as "Jackie Cavallo" and "Little John," and GIOVANNI VELLA, also known as "John Vella," "Mousey" and "Little John," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games in the Castle Collision Autobody Shop in Westbury, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT SIX
(Extortion Conspiracy)

43. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

44. In or about and between January 2008 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANKLIN CAMARANO, JOHN CAVALLO, also known as "Jackie Cavallo" and "Little John," and GIOVANNI VELLA, also known as "John Vella," "Mousey" and "Little John," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from John Doe #6 and John Doe #7, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT SEVEN
(Illegal Gambling - Oser Avenue Club)

45. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

46. In or about and between January 2009 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants ROBERT BERLINER, also known as "Bacala," LAWRENCE BETRO, ANTHONY CAVEZZA, also known as "Tony Bagels," THOMAS DITTA and CARLOS ZAMBRANO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Oser Avenue in Hauppauge, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT EIGHT
(Illegal Gambling - Keyland Avenue Club)

47. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

48. In or about and between January 2009 and May 2009, both dates being approximate and inclusive, within the Eastern

District of New York, the defendants DOMINICK DELIO, ROBERT DITO, FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and ANTHONY SABBAGH, also known as "Tony O," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Keyland Avenue in Bohemia, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT NINE
(Illegal Gambling - Knickerbocker Avenue Club)

49. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

50. In or about and between May 2009 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants DOMINICK DELIO, FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and ANTHONY

SABBAGH, also known as "Tony O," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Knickerbocker Avenue in Bohemia, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT TEN
(Illegal Gambling - Johnson Avenue Club)

51. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

52. In or about and between May 2009 and July 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants ROBERT BERLINER, also known as "Bacala," LAWRENCE BETRO, THOMAS DITTA and CARLOS ZAMBRANO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an

illegal gambling business, to wit: a gambling business involving illegal card games located on Johnson Avenue in Ronkonkoma, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT ELEVEN
(Illegal Gambling - Raynor Avenue Club)

53. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

54. In or about and between July 2009 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BERLINER, also known as "Bacala," LAWRENCE BETRO, ROBERT DITO, THOMAS DITTA and CARLOS ZAMBRANO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Raynor Avenue in Ronkonkoma, New York, which operated in

violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT TWELVE
(Conspiracy to Obstruct Enforcement of State Criminal Law)

55. The allegations contained in paragraphs 1 through 16 and 54 are realleged and incorporated as if fully set forth in this paragraph.

56. In or about and between March 2009 and September 2009, both dates being approximate and inclusive, ~~with~~ within the Eastern District of New York, the defendant ROBERT DITO, an official and employee of the State of New York and a political subdivision thereof, and the defendant ROBERT BERLINER, also known as "Bacala," together with others, did knowingly and intentionally conspire to obstruct the enforcement of the criminal laws of the State of New York, with the intent to facilitate an illegal gambling business, to wit: the illegal gambling business identified in paragraph 54, where one or more

conspirators conducted, financed, managed, supervised, directed and owned all or part of such illegal gambling business.

57. In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York, the defendants ROBERT DITO and ROBERT BERLINER, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a. On or about August 10, 2009, the defendant ROBERT DITO engaged in a telephone conversation.

b. On or about August 10, 2009, during a telephone conversation, the defendant ROBERT DITO told a coconspirator that law enforcement agents would be conducting a raid of an illegal gambling business within hours.

c. On or about August 10, 2009, the defendant ROBERT BERLINER engaged in a telephone conversation.

(Title 18, United States Code, Sections 1511(a), 1511(d) and 3551 et seq.)

COUNT THIRTEEN
(Interstate Transportation in-aid-of Racketeering)

58. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

59. On or about September 21, 2009, within the Eastern District of New York and elsewhere, the defendants FRANCIS

COSTELLO, DOMINICK DELIO, FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and ANTHONY SABBAGH, also known as "Tony O," together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling business, contrary to Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and 20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(1)(A), 2 and 3551 et seq.)

COUNT FOURTEEN
(Interstate Transportation in-aid-of Racketeering)

60. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

61. On or about September 26, 2009, within the Eastern District of New York and elsewhere, the defendants FRANCIS COSTELLO, DOMINICK DELIO, FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and ANTHONY SABBAGH, also known as "Tony O," together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling

business, in violation of Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and 20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(1)(A), 2 and 3551 et seq.)

COUNT FIFTEEN
(Interstate Transportation in-aid-of Racketeering)

62. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

63. On or about October 20, 2009, within the Eastern District of New York and elsewhere, the defendants FRANCIS COSTELLO, DOMINICK DELIO, FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and ANTHONY SABBAGH, also known as "Tony O," together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling business, in violation of Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and 20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the

promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(1)(A), 2 and 3551 et seq.)

COUNT SIXTEEN
(Interstate Transportation in-aid-of Racketeering)

64. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

65. On or about October 26, 2009, within the Eastern District of New York and elsewhere, the defendants FRANCIS COSTELLO, DOMINICK DELIO, FRANK POLITI, also known as "Frankie P" and "Frankie Cap," and ANTHONY SABBAGH, also known as "Tony O," together with others, did knowingly and intentionally use the mail in interstate commerce, with intent to distribute the proceeds of unlawful activity, to wit: an illegal gambling business, in violation of Title 18, United States Code, Sections 1955(a) and 2, and New York Penal Sections 225.05 and 20.00, and thereafter did perform and attempt to perform the promotion, management, establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(1)(A), 2 and 3551 et seq.)

COUNT SEVENTEEN
(Illegal Gambling - Veterans Memorial Highway Club)

66. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

67. In or about and between October 2009 and November 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants FRED ALESI, also known as "Whiney," ROBERT BERLINER, also known as "Bacala," LAWRENCE BETRO, THOMAS DITTA and CARLOS ZAMBRANO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Veterans Memorial Highway Club in Ronkonkoma, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT EIGHTEEN
(Illegal Gambling - Motor Avenue Club)

68. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

69. In or about and between October 2009 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendants ANTHONY ARCURI and AYUB SAYED, also known as "Adam," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located on Motor Avenue in Nassau County, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

71. The United States hereby gives notice to the defendants charged in Count One that, upon conviction of such

offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires any person convicted of such offense to forfeit:

a. any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962;

b. any interest in, security of, claims against or property or contractual right of any kind affording a source of influence over any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; or

c. any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, for which the defendants are jointly and severally liable.

72. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS TWO THROUGH FIVE, EIGHT, NINE THROUGH ELEVEN, SEVENTEEN AND EIGHTEEN

73. The United States hereby gives notice to the defendants charged in Counts Two through Five, Eight, Nine through Eleven, Seventeen and Eighteen that, upon conviction of any such offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d), which requires any person convicted of such offenses to forfeit any property, including money, used in violation of Title 18, United States Code, Section 1955, for which the defendants are jointly and severally liable.

74. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION AS TO
COUNTS FOUR, SIX, TWELVE AND THIRTEEN THROUGH SIXTEEN

75. The United States hereby gives notice to the defendants charged in Counts Four, Six, Twelve and Thirteen through Sixteen that, upon conviction of any such offenses, the government will seek forfeiture in accordance with Title 18,

United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

76. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2009R02325

*No.*

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*Fred Alesi, et al,*

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 1511(a), 1511(d), 1951(a), 1952(a)(1)(A), 1955(a), 1955(d), 1962(d), 1963, 1963(a), 1963(m), 2 and 3551 et seq; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c)

*A true bill.*

_______________________________ *Foreman*

*Filed in open court this* _________________ *day,*

*of* _____________ *A.D. 20* _____

_______________________________ *Clerk*

*Bail, $* _____________

_______________________________

***Amir Toossi, Assistant United States Attorney, (718) 254-6176***

EAG:AHT
F. #2009R02325

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

\- against -

JOHN CAVALLO,

Defendant.

\- - - - - - - - - - - - - - - - - X

PLEA AGREEMENT

11 CR 29 (LDW)

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States Attorney's Office for the Eastern District of New York (the "Office") and JOHN CAVALLO (the "defendant") agree to the following:

1. The defendant will plead guilty to Count Six of the above-captioned indictment (the "Indictment"), charging a violation of 18 U.S.C. § 1951(a). This count carries the following statutory penalties:

a. Maximum term of imprisonment: 20 years (18 U.S.C. § 1951(a)).

b. Minimum term of imprisonment: 0 years (18 U.S.C. § 1951(a)).

c. Maximum supervised release term: 3 years, to follow any term of imprisonment; if a condition of release is violated, the defendant may be sentenced to up to 2 years without credit for pre-release imprisonment or time previously served on post-release supervision (18 U.S.C. § 3583(b), (e)).

COURT EXHIBIT

    d.    Maximum fine: the greater of $250,000, twice the pecuniary gain or twice the pecuniary loss (18 U.S.C. §§ 3571(b)(3), (d)).

    e.    Restitution: Mandatory, to be determined by the Court (18 U.S.C. §§ 3663, 3663A).

    f.    $100 special assessment (18 U.S.C. § 3013).

    g.    Other penalties: Criminal forfeiture as provided in paragraphs 6 through 14 (18 U.S.C. § 981(a)(1)(C)).

    2.    The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines") is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence. The Office estimates the likely adjusted offense level under the Guidelines to

be level 25, which is predicated on the following Guidelines calculation:

| | |
|---|---|
| Base Offense Level (§ 2B3.2(a)) | 18 |
| Plus: Implied Threat of Bodily Injury (§§ 2B3.2(b)(1), 2B3.1(b)(7)(C)) | +2 |
| Plus: Amount Demanded Exceeded $50,000 (§ 2B3.2(b)(2)) | +2 |
| Plus: Manager or Supervisor (§ 3B1.1(b)) | +3 |
| Plus: Obstructing or Impeding the Administration of Justice (§ 3C1.1) | +2 |
| Less: Acceptance of responsibility (§ 3E1.1(a)) | -2 |
| Total: | 25 |

This level carries a range of imprisonment of 57 to 71 months, assuming that the defendant falls in Criminal History Category I. If the defendant pleads guilty on or before July 14, 2011, the government will move the Court, pursuant to U.S.S.G. § 3E1.1(b), for an additional one-level reduction, resulting in an adjusted offense level of 24, which carries a range of imprisonment of 51 to 63 months, assuming the defendant falls within Criminal History Category I.

3. The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any

reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

4.   The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 71 months or below. This waiver is binding without regard to the sentencing analysis used by the Court.  The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn.  The defendant waives any right to additional disclosure from the government in connection with the guilty plea.  The defendant agrees that with respect to all charges referred to in paragraphs 1 and 5(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. § 3006A note, and will not file any claim under that law.  The defendant agrees to pay the special assessment by check payable to the Clerk of the Court at or before sentencing.

5. The Office agrees that:

a. no further criminal charges will be brought against the defendant for (a) operating an illegal gambling business on 9th Avenue in Bohemia, New York in or about 2007, as set forth in Count Three of the Indictment, (b) operating an illegal gambling business in the Castle Collision Autobody Shop in Westbury, New York in or about 2008, as set forth in Count Five of the Indictment, (c) conspiracy to extort John Does #1 through #5 in or about and between July 2007 and January 2010, as set forth in Count Four of the Indictment, and (d) conspiracy to extort John Does #6 and #7 in or about and between January 2008 and January 2010, as set forth in Count Five of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq., and at the time of sentence, it will move to dismiss the remaining counts of the Indictment with prejudice;

and, based upon information now known to the Office, it will

b. take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and

c. make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c). Should it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea

of guilty but this Office will be released from its obligations under this agreement, including but not limited to: (a) moving for the additional one-level downward adjustment for timely acceptance of responsibility described in paragraph 2 above; and (b) the provisions of paragraph 5 (a)-(c).

      6.    Pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461, the defendant consents to the forfeiture of all of his right, title and interest in: (i) a money judgment in the amount of $45,000.00 (the "Money Judgment"); (ii) $6,375.00 in cash; a 12 gauge shotgun; a Dell PPX computer, serial number 29100-OEM-0001715-54392; an Acer ZG5, computer, serial number LUS410B087906167732547; an Acer T160, computer, serial number PTS4805004625064B02706; an HP Vectra, computer, serial number US90507787; and a Samsung GP6450 computer, serial number 0012519751, all recovered from 22 Maple Avenue, Blue Point, New York 11705 on November 23, 2009; (iii) $148,460.00 in cash recovered from safety deposit box #185 at TD Bank, 425 Route 347, Hauppauge, New York on November 23, 2009; (iv) $1,240.00 in cash; a Philips television; a Sony television; and a Samsung television, all recovered from 109 Carleton Avenue, East Islip, New York on July 28, 2009; (v) $1,200.00 in cash; a Compaq laptop, serial number CND70234P5; a Vizio flat screen television, serial number PHSAVAH4606; and a Sony flat screen television, serial number

4017959, all recovered from 2101-C Pond Road, Bohemia, New York on October 22, 2009; (vi) $11,810.00 in cash; a Panasonic LCD television, serial number MY82060070; a Sony Bravia television, model number KOL26M3000; an Audiovox television, serial number LA300H001063; a Samsung television, serial number AKZ43CDQ623; and a Compaq laptop, all recovered from 40-1 Oser Avenue, Hauppauge, New York on September 29, 2009; (vii) $2,160.00 in cash; a Dell computer tower, serial number 1GHV941; a Panasonic LCD television, serial number TCL32S1; a Sony LCD television, serial number 405129; and a Toshiba LCD television, serial number 805101011975, all recovered from 3275 Veterans Highway, Bohemia, New York on November 20, 2009; (viii) a White Westinghouse electric stove; a Kenmore gas stove; a Magic Chef freezer; a Sanyo HD television; a Vizio HD television; a Phillips television; a Roam air conditioner; a Honeywell air cleaner; and a Dell Inspiron 1501 laptop computer, all recovered from 140-12 Keyland Court, Bohemia, New York on August 16, 2009; (ix) $400.00 in cash; a Sony flat screen HD television; an RCA television; a Daewood VCR; a COBY television; and a Prism 7″ television, all recovered from 80 Knickerbocker Avenue, Unit 6, Bohemia, New York on November 23, 2009; (x) $2,970.00 in cash; a Gestetner 1302 copier; Motorola walkie talkies; a Samsung monitor, serial number AHL3CQP3005; an Audiovox monitor, serial number 06020037713641; a Sony monitor, serial

number 4073345; a Spectroniq monitor, serial number YT32HN0650A; a Compaq laptop computer, serial number CNF43016B5; and a Gateway monitor, serial number LIC22572577, all recovered from 856-6 Johnson Avenue, Ronkonkoma, New York on July 3, 2009; (xi) $4,940.00 in cash recovered from 736 Pleasant Avenue, Westbury, New York on November 23, 2009; (xii) $9,176.00 in cash; a Firestar 9mm interarms pistol, serial number 1930368; a Smith & Wesson model 908 9-millimeter pistol, serial number vdl5008; a Cobra 38 special 6-shot revolver, serial number A62176, all recovered from 16 Emmett Court, West Babylon, New York on November 23, 2009; (xiii) $1,916.00 in cash; a Harrington and Richardson Arms Co. revolver; an Acer laptop computer, serial number LXE770X0027520FAAF2000; a Gateway laptop computer, serial number T375A11008808, all recovered from 7 Ridge Court, Hauppauge, New York on November 23, 2009; (xiv) $10,320.00 in cash; a Samsung color laser copier/fax machine; a Compaq computer tower, serial number CNH5191FG1; and a HP computer tower, serial number MXF6250CYY, all recovered from 1444 America Avenue, N. Babylon, New York on November 23, 2009 (items ii through xiv collectively the "Forfeited Assets").

    7. If the defendant does not pay the Money Judgment in full two weeks before the sentencing date (the "Due Date"), interest on any unpaid balance of the Money Judgment shall begin to

accrue after the Due Date at the rate of interest set forth in Title 18, United States Code, Section 3612(f)(2). Payment of the Money Judgment shall be made by certified or bank check, payable to the United States Marshals Service, with the criminal docket number noted on the face of the check. The defendant shall cause said check to be hand-delivered to Assistant United States Attorney Evan Weitz, United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, NY 11201. If the defendant fails to pay any portion of the Money Judgment on or before the Due Date, the defendant consents to the forfeiture of any other property of his up to the amount of the Forfeiture Money Judgment, pursuant to 21 U.S.C. § 853(p), the Federal Debt Collection Procedure Act, or any other applicable law.

8. The defendant agrees that the Money Judgment and the Forfeited Assets constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1951(a). The defendant consents to the entry of an Order of Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, forfeiting the Money Judgment and the Forfeited Assets to the United States. In the event that the Government chooses not to forfeit the Forfeited Assets in this proceeding, the defendant agrees not to file a claim, or assist others in filing a claim, to the Forfeited Assets in any other proceedings brought by any governmental entity.

9. The defendant agrees to disclose all of his assets to the United States on a Financial Statement, (the "Financial Statement"), a copy of which is attached hereto as Exhibit A, within 30 days of his plea. The defendant agrees that a failure to disclose assets on the Financial Statement constitutes a material breach of this agreement. In addition, the defendant consents to the forfeiture to the United States of all assets in which he has an interest, but failed to disclose on the Financial Statement, if any.

10. Should undisclosed assets which the defendant owns or in which the defendant has an interest be discovered, the defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of said assets. The defendant agrees to execute any documents to effectuate the forfeiture of said assets.

11. The defendant agrees to fully assist the Government in effectuating the payment of the Money Judgment and surrender of the Forfeited Assets and to take whatever steps are necessary to ensure that clear title thereto passes to the United States. The defendant agrees not to file or interpose any claim or to assist others to file or interpose any claim to the Forfeited Assets in any administrative or judicial proceeding. The defendant agrees that the forfeiture of the Forfeited Assets is not to be considered

a payment of a fine or a payment on any income taxes that may be due.

12. The failure of the defendant to forfeit any monies and/or properties as required under this agreement, including the failure of the defendant to execute any document to accomplish same on timely notice to do so, shall constitute a material breach of this agreement. Upon such a breach, the defendant will not be entitled to withdraw the plea, but the Office may bring additional criminal charges against the defendant. The Office may also execute the Money Judgment upon any other assets of the defendant, pursuant to 21 U.S.C. § 853(p), the Federal Debt Collection Procedure Act, or any other applicable law.

13. The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of the monies and/or properties forfeited hereunder, including notice set forth in an indictment or information. In addition, the defendant knowingly and voluntarily waives his right, if any, to a jury trial on the forfeiture of said monies and/or properties, and waives all constitutional, legal and equitable defenses to the forfeiture of said monies and/or properties, including, but not limited to, any defenses based on principles of double jeopardy, the Ex Post Facto Clause of the Constitution, the statute of limitations, venue, or

any defense under the Eighth Amendment, including a claim of excessive fines.

14. This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

15. No promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. This agreement supersedes all prior promises, agreements or conditions between the parties.

To become effective, this agreement must be signed by all signatories listed below.

Dated: Central Islip, New York
July 14, 2011

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By: ______________________
Amir H. Toossi
Assistant United States Attorney

Approved by:
______________________
Elizabeth Geddes
Supervising Assistant U.S. Attorney

I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

______________________
John Cavallo
Defendant

Approved by:
______________________
Peter Tomao, Esq.
Counsel to Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA : CR-11-00029

-against- :

United States Courthouse
Central Islip, New York

JOHN CAVALLO,

Defendant. :

July 14, 2011
11:00 a.m.

\- - - - - - - - - - - - - - - - - X

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: LORETTA E. LYNCH
United States Attorney
100 Federal Plaza
Central Islip, New York 11722
BY: AMIR TOOSSI, ESQ.
SPIROS MOUSTAKAS, ESQ.
Assistant United States Attorney

For the Defendant: PETER J. TOMAO, ESQ.

Court Reporter: Mary Ann Steiger
100 Federal Plaza
Central Islip, New York 11722
(631) 712-6101

Proceedings recorded by mechanical stenography.
Transcript produced by computer.

THE CLERK: Criminal cause for pleading, U.S. v. John Cavallo.

Appearances, please.

MR. TOOSSI: Amir Toossi and Spiros Moustakas, for the United States.

MR. TOMAO: For John Cavallo, Peter Tomao.

Mr. Cavallo is standing next to me, your Honor.

THE COURT: I understand there's a plea; is that correct?

MR. TOMAO: Yes, your Honor.

At this time the defendant wishes to withdraw his previously entered plea of not guilty and enter a plea of guilty to count 6 of the indictment charging an extortion conspiracy, and that is pursuant to a written plea agreement with the government.

We have completed the Court's standard plea form and I understand the original has been provided to the Court.

THE COURT: Yes.

(The defendant is sworn.)

THE COURT: Mr. Cavallo, I understand you're pleading guilty to count 6; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You signed my plea agreement this morning, and that is your signature and your attorney's

signature; is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: And you know what the questions are. You have gone over the questions and answers on my plea agreement with your attorney?

THE DEFENDANT: Yes.

THE COURT: So you know what the questions are and you know what the answers are. I'll ask them in the same order.

Before accepting your plea, there's a number of questions I must ask to assure it is a valid plea.

If you do not understand any of my questions, please say so and I'll reword the question for you.

Do you understand that, having been sworn, your answer to my questions will be subject to the penalty of perjury or making a false statement if you do not answer them truthfully; do you understand that?

THE DEFENDANT: Yes.

THE COURT: What's your full name and how old are you?

THE DEFENDANT: John Cavallo, John Jack Cavallo. My age is 63, 5/26/48.

THE COURT: Are you a citizen of the United States?

THE DEFENDANT: Yes, your Honor.

THE COURT: What's the highest schooling you've obtained?

THE DEFENDANT: High school.

THE COURT: Are you presently, or have you recently been, under the care of a physician or psychiatrist?

THE DEFENDANT: Yes.

THE COURT: For what?

THE DEFENDANT: A physician for my health.

THE COURT: For what?

THE DEFENDANT: Heart problems, cancer.

MR. TOMAO: Your Honor, you'll recall we previously provided for the record a detailed discussion of his physical issues he's got. It takes about a page.

THE COURT: All right.

In the past 24-hours, have you taken any narcotic drugs, medicine or pills, or drunk any alcoholic beverages?

THE DEFENDANT: No, your Honor.

THE COURT: Have you taken some pills?

THE DEFENDANT: No, your Honor.

THE COURT: Have you ever been hospitalized or treated for narcotics addiction?

THE DEFENDANT: No, your Honor.

THE COURT: Is your mind clear?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand what's going on?

THE DEFENDANT: Yes.

THE COURT: Have you discussed this matter with your client?

MR. TOMAO: Yes, your Honor.

THE COURT: Does he understand the rights he would be waiving by pleading guilty?

MR. TOMAO: Yes, your Honor.

THE COURT: Is he capable of understanding the nature of these proceedings?

MR. TOMAO: Yes.

THE COURT: Do you have any doubt as to the defendant's competency to plead at this time?

MR. TOMAO: No.

THE COURT: Mr. Cavallo, you have a right to plead not guilty; do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead not guilty, under the Constitution and laws of the United States, you're entitled to a speedy and public trial by jury with the assistance of counsel on the charges; do you understand that?

THE DEFENDANT: Yes.

THE COURT: At the trial you would be presumed to

be innocent and the government would have to overcome that presumption and prove you guilty by competent evidence beyond a reasonable doubt, and you would not have to prove that you were innocent.

If the government failed, the jury would have the duty to find you not guilty; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In the course of the trial the witnesses for the government would have to come to court and testify in your presence, and your counsel has the right to cross-examine the witnesses for the government, to object to evidence offered by the government, and to offer evidence on your behalf; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: At the trial while you would have the right to testify if you chose to do so, you would not be required to testify.

Under the Constitution of the United States you could not be compelled to incriminate yourself. If you decided not to testify, the court would instruct the jury they could not hold that against you; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty and if I accept the plea, you'll be giving up your constitutional rights

to a trial and the other rights I just discussed. There will be no further trial of any kind, no right to appeal or colaterally attack at any time whether you're guilty or not; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'll ask the government; in the plea agreement, is there anything concerning appeal?

MR. TOOSSI: Yes, your Honor.

The defendant agrees to waive his right to appeal in the event he receives a sentence of 71 months of incarceration or below.

THE COURT: Do you understand what the government just said?

THE DEFENDANT: Yes, your Honor.

THE COURT: They just said if I give you 71 months or less, you may not appeal; do you understand that?

THE DEFENDANT: Yes.

THE COURT: If I give you more than 71 months, you may appeal only the sentence.

Once I accept your plea, you cannot take that back; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty I'll have to ask you questions about what you did in order to satisfy

myself that you're guilty of the charge to which you seek to plead guilty, and you'll have to answer my questions and acknowledge your guilt. Thus, you're giving up your right not to incriminate yourself; do you understand that?

THE DEFENDANT: Yes.

THE COURT: Are you willing to give up your right to a trial and the other rights I've just discussed?

THE DEFENDANT: Yes.

THE COURT: I'll ask the government to tell us what agreement there is with the plea and sentence other than the 71 months.

MR. TOOSSI: What agreement there is with regard...

THE COURT: Plea and sentence, other than the 71 months incarceration.

MR. TOOSSI: There is an agreement as to forfeiture, that a money judgment in the amount of $45,000 would be entered against the defendant and that interest would accrue if that money judgment had not been paid by the date of sentencing.

The defendant also waived his interest in a number of items of property that are listed on pages 6, 7 and 8 of the plea agreement.

THE COURT: Counsel, is that your understanding?

MR. TOMAO: Yes, your Honor.

In addition, this is all set forth in a formal written plea agreement which contains many other terms and I would ask that be marked as an exhibit, court exhibit, and included in the record.

THE COURT: Marked as a court exhibit. Any objection?

MR. TOOSSI: No, your Honor.

THE COURT: Marked as an exhibit included in the file.

Do you understand what has just been said?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you agree with that?

THE DEFENDANT: Yes.

THE COURT: Now, if this case went to trial, the government would have to prove certain things beyond a reasonable doubt.

I'm going to have them explain to you the elements they would have to prove beyond a reasonable doubt before a jury could find you guilty if the case went to trial.

MR. TOOSSI: Your Honor, the government would prove the defendant, together with others, knowingly and intentionally conspired, in or about and between January 2008 and January 2010, within the Eastern District of New York, to affect commerce by extortion, in that the

defendant, his coconspirators, agreed to obtain property, money specifically, from John Doe number six who the government will identify John Doe number six as Anthony Arcuri, and John Doe number seven as Ayub Sayed, and their consent to give this money to the defendant and his coconspirators was induced through the wrongful use of actual and threatened force, violence and/or fear.

THE COURT: Are you now aware of the elements of the crime which you are charged with respect to count 6 and you're pleading guilty to; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed the charge with your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand what you're pleading guilty to?

THE DEFENDANT: Yes, your Honor.

THE COURT: If this case had gone to trial and you were found guilty, what would be the maximum that the Court could sentence you to?

THE DEFENDANT: 20 years.

THE COURT: How about a fine?

THE DEFENDANT: 250,000.

THE COURT: You realize there's a special assessment of $100.

                                                                Also, if you serve some time in jail, I can give you up to three years of supervised release; do you understand that?

THE DEFENDANT: Yes, your Honor.

MR. TOOSSI: Your Honor, one point is that the maximum fine is actually greater of $250,000 or twice the pecuniary gain or twice the pecuniary loss.

Based on the facts the government anticipates that that will come out to $250,000, so it's clear what the maximum fine is.

THE COURT: All right.

Have you discussed the sentencing guidelines with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand the sentencing guidelines are no longer mandatory, but in sentencing the District Court is required to consider the applicable guideline range along with the factors listed in 18 U.S.C. 3553(a)?

THE DEFENDANT: Yes.

THE COURT: Has your attorney explained the factors listed in 18 U.S.C. 3553(a)?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions you would like to ask me about this charge, your rights or anything

relating to this matter?

THE DEFENDANT: No, your Honor.

THE COURT: Are you ready to plead?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'll ask your lawyer, do you know any legal reason why the defendant should not plead guilty?

MR. TOMAO: No, your Honor.

THE COURT: Back to you. Are you satisfied with the legal representation that you've received up to this point?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you feel your lawyer has done a good job?

THE DEFENDANT: Yes, your Honor.

THE COURT: How do you plead to count 6 of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you making the plea of guilty of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone threatened or forced you to take this plea?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone made any promises to you as to what your sentence will be?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone made any promise to you as to what I will sentence you to?

THE DEFENDANT: No, your Honor.

THE COURT: You'll have to tell me what you did in respect to count 6 that's causing you to plead guilty, what did you do?

THE DEFENDANT: I agreed, your Honor, with others to obtain money from operating of a poker room and that if they did not pay, they would not be able to continue in business.

THE COURT: Where was this done?

THE DEFENDANT: In Nassau and Suffolk County.

THE COURT: During what period of time?

THE DEFENDANT: From 1/08 to 1/10.

MR. TOMAO: Your Honor, the indictment charges a period of January 2008 to January 2010.

Mr. Cavallo admits it took place during that period of time.

THE COURT: Are you satisfied with the allocution?

MR. TOOSSI: Yes, your Honor, with one follow-up.

I would ask that the defendant confirm that he had agreed with Franklin Camarano and Giovanni Vella to

                                                                    engage in this crime.

MR. TOMAO: That's not part of our agreement that he name any names, your Honor. He agreed with others. If he wants names, it's not an agreement that he identify any individual.

THE COURT: He did agree with others to do this, he was part of a conspiracy?

MR. TOMAO: He certainly did; is that right; is that correct, Mr. Cavallo?

THE DEFENDANT: Yes.

THE COURT: Is that okay with you?

MR. TOOSSI: That's fine.

MR. TOMAO: We also for the record --

THE COURT: I'm not finished.

Did you know it was wrong what you were doing at the time?

THE DEFENDANT: Yes, your Honor.

MR. TOMAO: We do concede, your Honor, that it did affect interstate commerce.

THE COURT: Based upon the information given to me -- are you satisfied with the allocution?

MR. TOOSSI: Yes, your Honor.

THE COURT: Based upon the information given to me, I find the defendant is acting voluntarily, he fully understands his rights, the consequences of his plea, and

there's a factual basis for the plea and I, therefore, accept the plea of guilty to count 6 of the indictment.

What will happen next is there will be a probation report made. Your attorney will get it, he'll go over it with you, and there may be certain additions or corrections, and then we will have the sentencing.

MR. TOMAO: Your Honor, is the sentencing date going to be adjourned until all the codefendants plead?

THE COURT: I don't know.

MR. TOMAO: Your Honor, I would indicate that you had previously entered an order that Mr. Cavallo was to be taken to a hospital facility within the Bureau of Prisons, and that has never been done.

THE COURT: I didn't order he would be taken. It's in their discretion, but that they look into it.

MR. TOMAO: We have not heard anything back, your Honor, that any action was taken and Mr. Cavallo is still here.

For the record, your Honor, I'm not asking for any action, but I do want to put on the record we are continuing to be concerned about the health treatment he's receiving at the MDC, or the lack thereof, and would ask if there's going to be an extended period of time prior to sentencing, that he be removed to another facility.

THE COURT: I don't know how many people are

pleading guilty and how many haven't and how many want to go to trial.

MR. TOMAO: I guess we will find out in the next few weeks and we will see if we have to make a motion.

THE COURT: I have a feeling everybody is going to plead guilty.

MR. TOOSSI: Everybody, if not close to everybody.

THE COURT: I think so, so it's not going to be long.

MR. TOMAO: Thank you, your Honor.

(Proceedings in this matter are concluded.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
:
UNITED STATES OF AMERICA

CR-11-00029

-against- :

United States Courthouse
Central Islip, New York

JOHN CAVALLO,

Defendant. :

March 16, 2012
- - - - - - - - - - - - - - - - X 12:30 p.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: LORETTA E. LYNCH
United States Attorney
100 Federal Plaza
Central Islip, New York 11722
BY: AMIR TOOSSI, ESQ.
Assistant United States Attorney

For the Defendant: PETER J. TOMAO, ESQ.
226 Seventh Street
Garden City, NY 11530

Court Reporter: Mary Ann Steiger
100 Federal Plaza
Central Islip, New York 11722
(631) 712-6101

Proceedings recorded by mechanical stenography.
Transcript produced by computer.

THE CLERK: For sentencing, U.S. versus John Cavallo.

MR. TOOSSI: Amir Toossi, for the government.

Good afternoon, your Honor.

MR. TOMAO: Good afternoon, your Honor.

On behalf of defendant John Cavallo, Peter Tomao, Garden City, New York.

The record should indicate Mr. Cavallo is in the courtroom.

THE COURT: Pardon?

MR. TOMAO: Mr. Cavallo is here.

THE COURT: Yes.

Counselor, have you seen the probation report?

MR. TOMAO: I have, your Honor.

THE COURT: Any additions or corrections?

MR. TOMAO: Your Honor, I submitted a number of objections to the probation department and gave a copy to the U.S. Attorney.

We are prepared to have the Court rule based on the record. I've spoken with --

THE COURT: Do you want a hearing on any objections?

MR. TOMAO: No.

I've spoken to Mr. Cavallo about the objections and I have spoken about the need for a hearing, and he's

agreed to waive a hearing.

THE COURT: Mr. Cavallo, you understand what he just said?

You're entitled to have a hearing on the things that he objected to. He's waiving it and tells me that you are waiving it.

Are you ready to proceed?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has your lawyer discussed the probation report with you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any additions or corrections, other than what your lawyer said and he's waiving them and says that you waive them, you understand that?

MR. TOMAO: Your Honor, I would like to put the objections that we had on the record.

THE COURT: If you are going to put them on the record, I'm going to set it down for a hearing.

MR. TOMAO: Your Honor, there's -- excuse me.

THE COURT: You waived it; and, yet, you want to put it on the record. I don't understand what that means. Do you want a hearing, yes or no?

MR. TOMAO: No.

THE COURT: Okay.

MR. TOMAO: I would like -- there's only things I would like to add to it.

THE COURT: What's that?

MR. TOMAO: Your Honor, Mr. Cavallo asked me to make it clear on the record that he has not, at any time, admitted being a member of any organized crime group as indicated that he's a member in the presentence report.

MR. TOOSSI: Your Honor, if I may, there are two points that I want to make about the PSR. I have not put these in writing, and I apologize for that. I can do so today.

In paragraph 20, and I don't think any of these points have any relevance to this sentencing in particular, but I do want to put them on the record today.

In paragraph 20 it indicates that the gamblers that were being extorted had no known ties to organized crime.

I don't know how -- I just noticed that this morning -- I don't know how probation meant that, but obviously they had a tie to organized crime, but they don't have a membership within the organization.

In paragraphs 24 through 30, it repeatedly says that the poker club money was collected by Giovanni Vella. That is actually incorrect.

It was collected by a witness whose identity is

known to the government and I believe defense counsel knows who that is, but I'll keep that name confidential for purposes of sentencing given the crowd we have today. I don't think that has any relevance or has any impact on the sentencing.

THE COURT: Who are the five cooperators that he supervised, on the record.

MR. TOOSSI: They're not all cooperators, I want to make that clear.

There's a person whose identity is known to the government. Defense counsel has received copies of consensual recordings between that person and the defendant.

THE COURT: Was he part --

MR. TOOSSI: He was the main collector at the time that the consensual recordings were done; Giovanni Vella, Joseph Vella, Frank Camarano and the defendant himself.

THE COURT: That makes five.

MR. TOOSSI: Yes.

And I also want to add that we're not pressing this point because it's not clear to us who exactly Charley is, but there's a reference to Charley.

It's in the sentencing memo where the defendant, when he wanted to get the money from Anthony Arcuri and

Ayub Sayed, told the cooperating witness that he should take Charley with him.

Now, I think it would be difficult for the government to prove who Charley is.

THE COURT: He's not considered one of the five?

MR. TOOSSI: He's not considered one of the five, but I think the point is clear that we reach five coconspirators without Charley.

THE COURT: I'm making that clear because there's a recent decision by the Second Circuit that the parties should name the five, so you just named them.

Do you have any objection to that?

MR. TOMAO: Your Honor, I believe that Mr. Toossi has identified for us who the person referred to as CW 1 is, and that's the same person we have been talking about; is that correct?

MR. TOOSSI: That's correct.

But I do want to make sure that we're, as a ground rule in this proceeding, that we're continuing to refer to him as cooperating witness number one.

THE COURT: Yes.

MR. TOOSSI: Given who we have here today.

THE COURT: Okay.

MR. TOMAO: Your Honor, there's been a reference to who's in the courtroom.

I don't want there to be any suggestion there's anybody in the courtroom who should not be here.

In addition to Mr. Cavallo's wife Christine, is his daughter Danielle Cavallo, his son-in-law Robert Brown, his grandson Robert Brown, his granddaughter Chloe Brown, Mr. Cavallo's 16 year old daughter Gemma Cavallo, his other daughter Alexandria Cavallo, Mr. Cavallo's mother-in-law Barbara Prinz, Stanley Wojnaowski -- and I'll provide the spellings to the court reporter -- cousins Toni Ann Sorrentino, Luciana Sorrentino, his Godchild, and also his friend Patty Mullen, Tony Russo, who is a cousin, and Frank Pontillo, William Piano, Joe Russo, Sal DeCicco, Jimmy O'Keefe, Tony Sitto, Anthony Ambrosio, Julie Noest, Jon Gomes, and John Devivo.

Your Honor, there's two other individuals in the courtroom. One is Sister Elisa who wrote the letter to the Court. She has just retired from St. Francis Hospital.

And also in the courtroom is Dr. Leon Schwecter, who is Mr. Cavallo's principal physician. I'll provide the list to the court reporter.

MR. TOOSSI: Your Honor, may I make a comment on that list.

With respect to four of the individuals named by defense counsel, James O'Keefe has been identified by the

FBI as a known Gambino associate. He was tied to the Bergen Hunt Fish Club. He's a close associate of John Gotti and of the defendant's. In fact, the Bergen Hunt Fish -- could I ask for the child to be taken out of the courtroom?

THE COURT: They are.

MR. TOOSSI: The Bergen Hunt Fish Club is on 101st Avenue. Throughout the investigation the defendant was referred to as Jackie from 101st Avenue.

Also in the courtroom is Anthony Ambrosio, who has been a frequent attendant to the proceedings in this case. He was an associate of Gene Gotti.

As defense counsel knows, photos of the defendant visiting Gene Gotti in prison and photos of them embracing were disclosed in discovery.

Mr. Ambrosio is also known by the FBI to be a loan shark.

Johnny Devivo is an associate of the Gambino Crime Family.

He was caught on one of the wiretaps in this case instructing a cooperating witness to, quote, go see his friend, meaning the defendant.

And Billy Piano is a known Gambino associate. He's a former employee at the VIP Club. He was a former associate of a captain in the Gambino Crime Family, Sal

Scala, and also associated with former captain Tommy Sussano.

THE COURT: I think they have a right to be here if they want to.

MR. TOOSSI: That's fine.

MR. TOMAO: Your Honor, we were at the point I don't know if Mr. Toossi had any other additions he wanted to make to the report.

I will indicate that I did provide and filed with the Court a sentencing memorandum. I also provided a copy to Mr. Toossi. I have not filed it. I'm waiting to get his comments on what he would like me to redact from the report before it's filed.

THE COURT: I don't understand that. What are you talking about?

MR. TOMAO: The presentence memorandum which I filed.

THE COURT: Yes.

MR. TOMAO: Does have some names which I believe Mr. Toossi may ask me to redact, so we have held off on filing it on ECF. If there's none, then I'll go ahead and file it. I have to redact the names of children under the age of 16.

MR. TOOSSI: I didn't read this with an eye towards redactions. I'll read it on my way back to the

office tonight and --

THE COURT: Let's start all over again.

You did what, you filed a report? Is that the report you gave to me?

MR. TOMAO: Yes.

THE COURT: Now you want -- what do you want to do with the names in there?

MR. TOMAO: I'm sorry, your Honor.

I have sent it to the Court, I gave it to Mr. Toossi and the probation report, but it's not in the public file. There are redaction rules that I have to follow before I can put it in the public file.

THE COURT: Do I have it?

MR. TOMAO: Yes, you have it.

THE COURT: So some of this is not in the public file?

MR. TOOSSI: He just hasn't filed it on ECF, is what defense counsel is trying to say.

I think what he's trying to say is that he's waiting for me to tell him what should be redacted in this before he files it on ECF. I appreciate that. I didn't realize that he was waiting for me to do that.

THE COURT: Do you want to do it now?

MR. TOMAO: No. I will wait a week and file it then.

MR. TOOSSI: What we can do is I can tell him what I think needs to be redacted, and he can file the redacted version on ECF.

THE COURT: Now I understand. Thank you.

Do you want to be heard with respect to your client?

MR. TOMAO: Yes, your Honor.

THE COURT: Briefly.

MR. TOMAO: Your Honor, we have made in connection --

THE COURT: I read all these papers, by the way, and every letter sent.

MR. TOMAO: I'm sorry, your Honor?

THE COURT: I said, I read your papers and I read every letter sent.

MR. TOMAO: Thank you, your Honor, I appreciate that.

THE COURT: That's why I said briefly. I read all of this.

MR. TOMAO: I understand, your Honor.

We did make four motions for downward departures.

The Second Circuit is asking that we renew those motions publicly so there's rulings on them. I have a number of sentencing appeals where that's raised as being

waived if I don't repeat them, so let me indicate the four motions I made.

I made a motion that you downwardly depart on the basis of Mr. Cavallo's physical condition. You have substantial information in that regard.

THE COURT: I read all of that, all of the doctors' report, the hospital reports, two of them, hospital records, doctors' reports. I read them all.

MR. TOMAO: Thank you, your Honor.

As I indicated, Dr. Schwecter is in the courtroom if the Court had any questions for him.

We also made, and I'm sure the Court has read, a motion based on extraordinary family circumstances.

THE COURT: Yes.

MR. TOMAO: As well as presentencing confinement.

THE COURT: Yes.

MR. TOMAO: And, also, we've asked the Court to consider all of those collectively under the 5K2.0 as multiple circumstances.

THE COURT: Yes.

MR. TOMAO: Your Honor, I know Mr. Cavallo because I was appointed by Judge Spatt to represent him back in 2005.

What I know about him I know from what's

happened here in the courtroom and from what his family has told me and have written in the letters to you.

I know that the picture that's painted by this is very different than the picture painted by the government.

They paint a picture of Mr. Cavallo not as a heartless gangster, as the government would portray him as, but as a loving, supportive father, husband and friend.

Mr. Cavallo also, as the Court has recognized before, has serious medical problems. However, he has a strong will and determination to put his best foot forward.

When I represented him in the earlier case he even refused to go to the hospital because he would delay the trial. He went to trial and was found not guilty.

This case is very different. He's admitted his guilt and is ready to be sentenced. He's admitted his guilt to the extortion count.

Your Honor, there was a RICO count which he was ready to fight and he wanted a speedy trial on that issue.

When the Government agreed to accept the plea to the extortion count, he pled guilty and since then he's wanted to go forward with his sentencing to end the stress of the case upon him and his family.

Your Honor, we would ask the Court to consider the new amendments to the sentencing guidelines, the 2010 amendments, which now make the physical condition of a defendant an issue which may be considered.

And we think that you can see that based upon the representation in this case, this is a very unusual extraordinary case in terms of the presentence, in terms of the guideline as regards Mr. Cavallo's physical condition.

I think we also can see now that we have had the full investigation and the PSR, that there were no physical threats that were ever conveyed to victims in this case. They've spoken to one man who is referred to CW 1. He recorded them for the FBI and, fortunately, have gone no further.

There's no evidence here of any physical violence involving Mr. Cavallo.

The associations that are indicated are many years old and have to do with places that are long gone and people who are long dead.

Mr. Cavallo is about to be sentenced by the Court. He's been in prison for over a year.

We ask that he be released so he can go back to his family, back to his doctors and deal with his medical issues; and, if not, that he get the shorter sentence the

Court feels appropriate under the circumstances.

Thank you.

THE COURT: Do you wish to be heard?

THE DEFENDANT: I apologize for what I put the Court through and my family and you, your Honor.

THE COURT: Does the government wish to say something?

MR. TOOSSI: I'll be very brief, your Honor.

Our argument is laid out in the sentencing memorandum that I filed, but I want to respond to a couple things that defense counsel has said.

One, he mentioned that these associations are from a long time ago. And, certainly, the association with John Gotti is certainly an old one.

But I think, based on the attendance of four known Gambino associates at his sentencing, that association is very present.

It's evidenced by the fact that the defendant was attendant at a wake of a Gambino member just weeks before he was arrested in this case.

And so up until his incarceration, his association with that organized crime family continued.

THE COURT: I'm not putting any weight on my sentencing of people that have come to this Court to watch. I don't care who they are and I don't care what

record they have.

MR. TOOSSI: Okay.

THE COURT: It's in no way based upon that.

MR. TOOSSI: Okay.

The other point I want to make about the physical condition was that as defense counsel has said, the defendant's physical condition, the illness that he's had, have persisted over a number of years, including the time period that the charged crime occurred during.

And, in fact, during the course of the investigation he directed a cooperating witness to go collect money from these gamblers when he had gone to the hospital. His illness didn't prevent him from committing these crimes.

And so I think that the Court should take that into consideration as well in evaluating his physical condition to the extent it's relevant under 3553(a).

I would also note that the defendant agreed to pay $45,000 in forfeiture prior to sentencing. His lawyer has indicated that he does not have the money to pay that. He has not paid that.

I think that should be taken into consideration by the Court. That is a technical breach in the plea agreement with the government who wishes to give him the benefit of the plea agreement with the advisement to the

Court that we believe that his making that payment, that $45,000 payment, should be a condition of his sentencing whether he's able to do so in the future or not.

THE COURT: What do you say to that?

MR. TOMAO: Your Honor, during the plea negotiations, I told Mr. Toossi that Mr. Cavallo did not have the money.

I'm appointed counsel here. He's had financial statements. Probation has done a full financial review of his assets. They don't find that he has those assets to pay.

We understand the Court's going to issue the order of forfeiture for that amount, and he will be responsible to pay that, but beyond that I can't give them what he doesn't have. If he had it, he wouldn't have appointed counsel.

MR. TOOSSI: Your Honor, to the point of forfeiture, we ask that the Court make a preliminary order of forfeiture part of the defendant's sentence and attach it to the defendant's judgment of conviction and I'll hand a copy of it to your courtroom deputy now.

The preliminary order has already been signed by your Honor on February 2nd of this year and the U.S. Attorney's office will submit, within the next 30 days, a final order of forfeiture.

THE COURT: For that amount?

MR. TOOSSI: For that amount once publication has been completed. There are other items that were seized during the course of the investigation.

THE COURT: And that will be forfeited too?

MR. TOOSSI: Correct.

MR. TOMAO: All of that is what we agreed to in the plea agreement.

It's the same information; right, Mr. Toossi?

MR. TOOSSI: Correct.

MR. TOMAO: Thank you.

THE COURT: Since there's such a large audience listening to what's going on, and since they heard the prior sentence where everybody tells me they're sick, there's sickness in the family and I should take that into consideration, and we do take that into consideration, but we also take into consideration were they sick before they committed the crime? Were the people who they love and support them, were they sick before the crime? So why does he commit a crime when all these people being sick and now coming in and say, give me sympathy or give me leniency because I'm sick and because there are people that I love that are sick. They were sick before you committed the crime.

This is a crime of extortion. That's a rough

one.

Anyway, the guidelines are a level 24 which means 51 to 63 months. I will go to the bottom of that line, which is 51 months incarceration, three years supervised release, special assessment of $100. I will sign the forfeiture order.

THE CLERK: It's already signed, Judge.

THE COURT: I thought he was going to give me another one?

THE CLERK: He asked for 30 days to submit it.

THE COURT: Fine.

Does he have a right to appeal?

MR. TOOSSI: Under the plea agreement, no, given the sentence that's been imposed.

THE COURT: He has no right to appeal.

MR. TOMAO: Your Honor, I would ask that the Court permit him to file a notice of appeal as a poor person regarding this.

THE COURT: If he doesn't have a right to appeal, I'm not going to give him that right if he waived it.

Oh, you wanted -- you recommended that I send him to a particular hospital for them to determine what treatment he needs and receive it if he needs that treatment. Which hospital is that?

MR. TOMAO: Your Honor, we had asked that he be -- you're talking about a federal medical center?

THE COURT: Yes.

MR. TOMAO: We asked that he be designated to Devens in Massachusetts.

THE COURT: I will recommend it. If not that, some other institution where they can evaluate his illnesses and what needs and treatment he needs.

Of course, he will get credit for the time served.

MR. TOOSSI: Your Honor, just for the record, in coming to the adjusted offense level of 24, I wanted to confirm, for the record, you're adopting paragraphs 49 through 52 and 54 of the PSR?

THE COURT: What is that?

MR. TOOSSI: I'll go through it.

A base offense level of 18 based on guideline 2B3.2A, enhancement of two points for expressed or implied threats under 2B3.2B1, two point enhancement for the extortion demanded exceeded $50,000, a three point enhancement for adjustment for the role in the offense, a two point enhancement for --

THE COURT: It comes to a level 24, doesn't it?

MR. TOOSSI: And a two point enhancement for obstruction of justice, and three level reduction for

acceptance of responsibility.

THE COURT: For a total of 24?

MR. TOOSSI: A total of 24, yes.

THE COURT: Not only that, I have considered 3553(a) in my sentencing.

And let me say there are certain other conditions I have to impose.

The defendant is prohibited from engaging in any gambling activities during the period of supervised release, and he should not associate with any known members of any La Cosa Nostra or any other criminal group.

MR. TOMAO: Your Honor, I'm not exactly sure how he's supposed to know that. If the government has a list they can indicate to us --

PROBATION OFFICER: I'm sorry to interrupt, they will provide him with a list I believe.

THE COURT: Okay.

Thank you.

MR. TOMAO: We had open counts. I don't know if the government moved to dismiss.

MR. TOOSSI: The government moves to dismiss them; yes, your Honor.

THE COURT: Granted.

MR. TOMAO: I would ask that the Court allow Mr. Cavallo to be released on bail and surrender to the

Case 12-1163, Document 30, 07/17/2012, 666391, Page104 of 110
A95
22

facility so that he can go to a doctor here and be examined prior to entering the facility.

THE COURT: Denied.

MR. TOMAO: Thank you, your Honor.

(Proceedings in this matter are concluded.)

Mary Ann Steiger, CSR
Official Court Reporter

AO 245B (Rev. 6/11/2011 - NYED) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of New York

UNITED STATES OF AMERICA
v.
JOHN CAVALLO

**JUDGMENT IN A CRIMINAL CASE**

Case Number: CR 11-00029-06[LDW]

USM Number: 71623-053

PETER J. TOMAO, ESQ (CJA)
Defendant's Attorney

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAR 19 2012 ★
LONG ISLAND OFFICE

**THE DEFENDANT:**

☑ pleaded guilty to count(s) 6 of a 18-count Indictment.

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☐ was found guilty on count(s) after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1951(a) | Conspiracy to Commit Extortion by use of Force | 1/2/2018 | 6 |

The defendant is sentenced as provided in pages 2 through 5 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s) 1, 3, 4, & 5 ☐ is ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/16/2012
Date of Imposition of Judgment

[signature]
Signature of Judge

LEONARD D. WEXLER, Senior USDJ
Name of Judge Title of Judge

3/19/2012
Date

Case 12-1163, Document 30, 07/17/2012, 666391, Page105 of 110

DEFENDANT: JOHN CAVALLO
CASE NUMBER: CR 11-00029-06[LDW]

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

51 MONTHS. Defendant to receive credit for time served.

☑ The court makes the following recommendations to the Bureau of Prisons:

FMC DEVENS, MA.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ________ ☐ a.m. ☐ p.m. on ________ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on ________ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ________ to ________

a ________ , with a certified copy of this judgment.

________
UNITED STATES MARSHAL

By ________
DEPUTY UNITED STATES MARSHAL

Case 12-1163, Document 30, 07/17/2012, 666391, Page106 of 110

DEFENDANT: JOHN CAVALLO
CASE NUMBER: CR 11-00029-06[LDW]

Judgment—Page 3 of 5

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :
3 YEARS.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within forty eight hours after such change;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer anycontrolled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of afelony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminalrecord or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Case 12-1163, Document 30, 07/17/2012, 666391, Page107 of 110

DEFENDANT: JOHN CAVALLO
CASE NUMBER: CR 11-00029-06[LDW]

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until ________. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: JOHN CAVALLO
CASE NUMBER: CR 11-00029-06[LDW]

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ 100.00 due immediately, balance due

☐ not later than ____________, or
☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within ________ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:

See Attached Preliminary Order of Forfeiture, dated 2/2/2012.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**Criminal Notice of Appeal - Form A**

## NOTICE OF APPEAL

**United States District Court**

Eastern District of New York

Caption:
USA v.
John Cavallo

Docket No.: 11-CR-0029 (LDW)

(District Court Judge)

Notice is hereby given that John Cavallo appeals to the United States Court of Appeals for the Second Circuit from the judgment [✓], other [ ] ______ (specify)

entered in this action on 3/19/2012.
(date)

This appeal concerns: Conviction only [ ] Sentence only [✓] Conviction & Sentence [ ] Other [ ]

Defendant found guilty by plea [✓] trial [ ] N/A [ ].

Offense occurred after November 1, 1987? Yes [✓] No [ ] N/A [ ]

Date of sentence: 3/16/2012 N/A [ ]

Bail/Jail Disposition: Committed [✓] Not committed [ ] N/A [ ]

Appellant is represented by counsel? Yes [✓] No [ ] If yes, provide the following information:

Defendant's Counsel: Peter J. Tomao

Counsel's Address: 226 Seventh Street, Ste. 302
Garden City, NY 11530

Counsel's Phone: (516) 877-7015

Assistant U.S. Attorney: Amir H. Toossi

AUSA's Address: 271 Cadman Plaza East
Brooklyn, NY 11201

AUSA's Phone: (718) 254-6176